WINDHAM,
*February,*
1830.

TOWN OF LONDONDERRY *vs.* TOWN OF ACTON.

On the trial of an appeal from an order of removal made by two justices, the same inquiry may be had as was, or ought to have been, had before the justices.

In such a case, under the issue, *whether the pauper was likely to become chargeable,* it was holden that the defendant town was not entitled to prove that, previous to the making of the order, the constable of the town from which the pauper was to be removed, presented to the pauper a writing containing a request for the town to assist him, which he refused to sign ; and that the same constable had taken from the pauper an ox for a tax of $4, when there was a yearling heifer which he might have taken ;—such facts being irrelevant to the issue.

A person is not liable to be removed, as likely to become chargeable, unless at the time of making the order there was a prospect, or a strong probability, arising from circumstances then existing, that he or his family would soon become chargeable to the town.

Neither is one liable to be removed while owning and occupying a freehold estate.

When a person has property, whether real or personal, he must first expend that in his own support before he can make any effectual or legal call upon the overseers of the poor for relief.

On the 8th day of May, 1828, two justices made an order of removal of one Elisha Johnson and his family from *Londonderry* to *Acton.* The town of *Acton* appealed to the county court, and there pleaded, *that, at the time of making the order, Johnson and family were not likely to become chargeable to the town of Londonderry.* Issue was joined to the jury. On the trial of the case, September term, 1829, HUTCHINSON, J. presiding, the following facts appeared in evidence : Johnson had owned and lived on a farm in *Acton,* and, a few years before, had exchanged it for one in *Londonderry,* and received for the difference between them about $200, and immediately moved on to the farm in *Londonderry,* which consisted of about sixty acres,—from six to ten acres of which was pretty good land, the rest very hilly and rocky. On this farm were an old house used for a barn, and a poor old log house, without windows, in which the family lived. At the time the order of removal was made, Johnson was fifty-five years of age, had a large family of children, some of age and gone from him, seven or eight under age and living at home, except working out some in the neighborhood. The family had one old feather bed, and some straw beds, four woollen blankets, two very poor woollen bed quilts, no sheets, and only two chairs. Whenever they were sick, the neighbors assisted them with necessaries. Johnson, about the 1st of May, 1828, owed a debt of about $75, which the creditor secured by attaching his horse, a small pair of oxen, and a yearling heifer ; but finding he could hold only the oxen and possibly the heifer, the creditor was induced to take a

WINDHAM,
February,
1830.

Londonderry
vs.
Acton.

note signed by Burton and Pierce for the amount of the debt, and they took the property attached, and put it into Johnson's possession ; but they were to sell it at pleasure if Johnson did not pay the debt by a set time, which had passed before the trial, and the debt was not paid. At the time the order was made, the family were nearly destitute of meat and grain, but had five bushels of rye due to them. The farm was worth from 250 to 280 dollars ; thirty acres of it was under some sort of improvement, but very poorly fenced. Johnson was usually healthy and industrious, but was a poor calculator. He had never applied to the town for assistance. He had a sick daughter living in *Acton*, who received aid from that town. He could not carry on business to advantage for want of tools. Johnson staid on the farm, and the property attached remained there, and was used by him. During the season of 1828, he raised about sixty stooks of rye, seven or eight tons of hay—had near two acres planted with corn—raised potatoes and other sauce sufficient for the family through the fall and winter. The town of *Acton* offered to prove that the constable of *Londonderry*, before making the order of removal, presented to the pauper a writing containing a request for the town to assist him as a pauper, which he refused to sign, and that the constable of *Londonderry* took an ox for a tax of four dollars, when there was a yearling heifer he might have taken. This was objected to, and rejected by the court. It appeared in evidence that Johnson afterwards paid said tax by borrowing one dollar from a neighbor, and letting his boy to work for the rest ; that one or two of his boys under age worked out—something was to be paid them when they became of age ; that he expected to let the boys have this, but could controul it if he should then need it ; that he was owing sundry small debts. The counsel for *Acton* requested the court to instruct the jury, that, while Johnson was owner of said real estate, he could not be removed to *Acton*, and therefore was not likely to become chargeable to *Londonderry*. But the court charged that, if, upon a full consideration of all the circumstances of the family and property of Johnson, they believed he could meet and go through such a fit of sickness of himself, or either of his family, as might reasonably be expected in such a family, without aid from the town, or charity of individuals, he was not likely to become chargeable to *Londonderry* ; but, if they believed, in case of such a sickness, he would require the aid of the town, unless provided for by the charity of individuals, then, he was likely to become chargeable to *Londonderry*.

WINDHAM,
February,
1830.

Londonderry
vs.
Acton.

The jury found in favor of *Londonderry*, and a *respondeas ouster* was awarded. To these decisions and charge, and refusal to charge, the town of *Acton* excepted ; and the case was removed to the *Supreme Court* for a revision of said decisions.

*Argument for defendants.*—The town of *Acton* contends,

I. That Johnson, from the case, was not likely to become chargeable to *Londonderry*, and so the court ought to have charged the jury. The amount of property owned by him shows it. No material change had taken place in his circumstances ; nor had he asked for aid at the time he was ordered to remove. Whether he could meet and go through such a fit of sickness of himself and family as might be reasonably expected in such a family, without charity or town assistance, was too indefinite a criterion. The *Stat.* of 1817, (*p.* 382, *s.* 1,) seems to contemplate the right of remaining so long as he shall support himself and family.

II. Johnson could not be removed from his freehold. This has been decided to be the common law from the time of the *Mirrors*. *Burrows settl. cases*,412, *Rex* vs. *Aythrop Rooding* ;—*Ib.* 524, *Rex* vs. *Leeds* ;—3 *Burns' Jus.* 424, S. C. This doctrine has prevailed in the construction of the statute 13 and 14, *Car. II. cap.* 12, which is the only statute in England authorizing removals on the ground of being likely to become chargeable. Nor is there any decision to the contrary.—3 *Burns*, 412 ;—*Foley*, 257, *Harrow* vs. *Edgeware* ;—*Bur. settl. cas.* 147 ;—*Str.* 1131, *Hatfield* vs. *Tisley* ;—*Str.* 97 ;—*Settl. cas.* 122, *Mursley* vs. *Grandboro.*—So too in Massachusetts the same construction has prevailed.—3 *Mass.* 440, *Salem* vs. *Andover*, by *Parsons*, C. J. ; —7 *Ib.* 3, *Granby* vs. *Amherst* ;—12 *Ib.* 386, *Somerset* vs. *Dighton*.

III. The testimony rejected ought to have been admitted. It tended to show the actual state of Johnson's property, and that the attempt to remove him was collusive.

*Argument for the plaintiffs.*—1st. It is believed that the county court did not err in rejecting the evidence. It was not pertinent to the issue whether " likely to become chargeable or not."

2nd. It is contended that the pauper's owning real estate in *Londonderry* was no legal objection to his removal, inasmuch as he might be likely to become chargeable in such an event. The English authorities cited are based upon the English statutes. By 13th and 14th of Charles II. no person was removeable from his own property, and being immoveably thereon for forty days

gained a settlement.—1 *Term R.* 244, *King* vs. *Warblington ;*
—1 *East R.* 296, *King* vs. *Donstaud ;*—1 *Blackstone,*598.

3d. It is insisted that this question must be decided upon the
construction of our own statute.—*Statute, page* 370, *sec.* 3.

The opinion of the Court was delivered by

WILLIAMS, J. The issue which was tried in this case in the county court was, whether Johnson, the pauper, removed from *Londonderry* to *Acton,* was likely to become chargeable to the former town at the time of removal.    On the trial, exceptions were taken to the decision of the court in rejecting certain testimony offered by the town of *Acton,* and also to the charge of the court.    A verdict was given for *Londonderry,* and on these exceptions the cause was passed to this Court.

On the trial of an appeal from an order of removal made by two justices, the same inquiry may be had, as was, or ought to have been, had before the justices.    It will be proper, therefore, to inquire what must be found by the justices previous to making the order. The statute says that " if the overseers of the poor of any town or place shall find, suspect, or have reason to believe, that any stranger who shall have come to reside in such town or place, and has not gained a legal settlement therein," they may make complaint, &c.    The justices must find the fact that the person alleged to be a pauper has come to reside in such town—that he has not gained a legal settlement therein—that he has already become, or is likely to become, chargeable to the town whose overseers of the poor make the complaint.    And then, having ascertained the place of his legal settlement, they order him to remove there by a time by them prefixed, and, on his neglect, issue a warrant for his removal.    This, being a power given by statute, cannot, and ought not, to be exercised in any cases except in those especially authorized or directed.    Every person who can support himself without being a public charge should be permitted to take up his abode where his inclination may direct, and seek his living in those places where he can find the best prospects of success in his business or calling, and to consult his fancy or his interest in selecting the place of his residence without being liable to be directed in his choice, except in obedience to the laws of the government.    The policy of the law, however, has directed that if from misfortune or fault he becomes unable to maintain himself or family, he may be restricted in his choice, and must remain in that place which the law points out as the place of his settlement. It may be remarked

WINDHAM,
February,
1830.
Londonderry
vs.
Acton.

that whenever a person is thus reduced so as to become the sub ject of a proceeding to ascertain the place of his settlement, he is passive, he has no voice in the proceedings, and however inconvenient or injurious it may be to his feelings or his interest, he has nothing to do but to obey the order, or be removed by a regular warrant. This renders it necessary that the proceedings should be strictly regular, and will lead to the inquiry whether he may not be in a situation that he cannot be affected by any proceedings between two contending towns.

The pleadings in the case under consideration put in issue the fact whether Johnson, at the time the order was made for his removal, was likely to become chargeable to the town of *Londonderry*. It will readily suggest itself to the mind of every one that this inquiry is important in its nature, and is the fact on the existence of which all the proceedings of the justices are to depend. For unless the person to be removed is actually chargeable to the town, or there is a rational prospect of his becoming so, there can be no reason why he should be disturbed in the choice of his residence. And if the proceedings are not made to depend on this, any one may be compelled to leave his domicil and depart for the place where chance or accident may have fixed his settlement, at the caprice of those who may wish to drive him from a town in which he chooses to remain.

In the different statutes upon this subject to which the Court have been referred, it will be observed there is a great similarity in the phraseology made use of. The English statute of 13 and 14 *Car. II. c.* 12, is in the following words ; " two justices of the divis-
" ion where any such person, *that is likely to become chargeable*
" to the parish, shall come to inhabit, may by their warrant re-
" move," &c. The statute of Massachusetts is, " all persons ac-
" tually chargeable, or who through age or infirmity, idleness or
" dissoluteness, are likely to become chargeable," may be removed.
The statute of this state is, " any *stranger* that has already, or is
" likely to become chargeable," &c.

It will be noticed that in our statute, the term *stranger* is made use of, which it has been remarked cannot be applied to persons having a fixed residence. The English statute, however, was made for persons who had no fixed residence ; the preamble to which recites, " that poor people are not restrained from going
" from one parish to another, and, therefore, do endeavour to set-
" tle themselves where there is the best stock, the largest com-
" mons or wastes, to build cottages, and the most woods to burn

WINDHAM,
February,
1830.
_____
Londonderry
vs.
Acton.

" and destroy, and when they have consumed it, then to another " parish." And it is for the removal of this description of persons that the statute provides. All of these statutes, however, make the removal to depend upon the question whether the person was actually chargeable, or was likely to become chargeable. The questions which arise in this case are to be determined with a view to this fact, *viz.* the prospect of Johnson's becoming chargeable to the town of *Londonderry.*

Our first inquiry is whether the evidence which was offered and *rejected* tended to prove the issue joined in this case ? It has been urged that the evidence offered to prove that the constable of *Londonderry* endeavoured to procure Johnson to sign a writing requesting the town to afford him assistance, ought to have been admitted : for if it was made with sinister views it should operate strongly against the town of *Londonderry.* We think, however, that this is a very strong reason why it should be rejected. If the constable acted with improper views in presenting this writing, it ought not to cast any prejudice on the town who are here prosecuting this suit, or have any effect on the question which was then before the jury. And further, it was wholly irrelevant to the subject in dispute. Equally irrelevant was the conduct of the constable in making a larger seizure than he should have done for satisfying the taxes due from Johnson, to wit, in taking an ox for a tax of four dollars, when he might have taken property of less value. It is urged that this last testimony was admissible to show the property of Johnson ; and it would have proved either that he owned the ox, or had a right of action therefor. It does not appear that it was offered with this view, and if it was, the party offering it had all the benefit which he could have derived from the fact, inasmuch as it appears that the tax was paid, and, of course, any property which the constable may have levied on for the purpose of collecting that tax must have been released from the levy. We are of opinion that this testimony was properly rejected as wholly irrelevant and not tending to prove the issue then on trial.

The next question which was argued to the Court arises under the charge to the jury, "that, if upon a full consideration of all the circumstances of the family and property of Johnson, they believed he could meet and go through such a fit of sickness of himself or either of his family as might reasonably be expected in such a family, without aid from the town or charity of individuals, he was not likely to become chargeable," &c. But if he could not meet such sickness without such charity or aid, he was likely to be-

come chargeable. This has been objected to as too indefinite a criterion to guide the jury in finding the issue whether Johnson was, or was not, likely to become chargeable. This was the important inquiry, and the only question for the jury to determine, and if the directions given to them were correct and sufficiently definite, there is no objection to the charge ; but if they were not, if they were calculated to lead the jury to an erroneous view of the subject in controversy, the cause must go to the jury again. The directions given to the jury were, that upon the happening of a certain event which might reasonably be expected in the family of Johnson, he would be considered as likely to become chargeable ; thus making the likelihood to depend upon a contingency which might or might not thereafter happen. Under this charge the jury would have to take into consideration a great variety of facts, and after all the light which they could gather from them, it must still be a matter of great doubt and uncertainty whether the contingency would happen or not. They must take into consideration the present state of their health, the nature and strength of their respective constitutions, the situation of the place where they lived, whether more or less exposed to the attack of disease, the manner of their living, the probable severity and duration of the sickness, and a variety of circumstances of this nature, on which it could not be expected they could form an accurate or correct opinion. Again, this likelihood is made to depend upon a possibility rather than upon an immediate or probable expectation of the person being in such a situation as to require the assistance of his friends or the town.

It was urged on the argument of this case with great force, that this likelihood to become chargeable must be an immediate likelihood or prospect of becoming soon chargeable, in order to justify the justices or jury in saying a man should be liable to remove under this statute. The court in making this charge was undoubtedly governed by the opinion expressed in the case of *Bradford* vs. *Corinth*. That however differs from the charge here given, and contemplates a case of such entire destitution and poverty as might be evidence, especially if it was connected with other circumstances, of a person being likely to become chargeable. But the case to which the charge under consideration applies is that of a man in possession of property to some considerable amount, and nearly or quite free from debt. In the case between the parishes of *Teelby* and *Willerton*, 1 *Str.* 77, and 3 *Burns*, 444, the justices adjudged that a person *may* become chargeable, and this order was quashed and

WINDHAM,
February,
1830.

Londonderry
vs.
Acton.

the court say, "that the act only enables justices to remove per-
" sons likely to become chargeable, and not persons that possibly
" may become so ; for no one can say who may not be chargea-
" ble, and there is as much difference in this case between *may* and
" *likely*, as between a possibility and a probability." In anoth-
er case found in *Burns*, 444, the order was that such a person will
become chargeable if permitted to abide; and it was objected that it
was uncertain, as it may be 10 years hence; and the order was quashed

The rule which was given to the jury as a criterion by which
to determine what persons may be removed as liable to
become chargeable, would be applicable to a great number of
persons whom it would not be considered as reasonable or prop-
er to subject to any coercive measures to oblige them to remove
to the place of their settlement. A great share of the single men
who hire out by the month or the year, and who are industrious
and enterprising, and most of those who are commencing business
with but little property, but who are prudent, economical, and at-
tentive to business, might not be able to meet the ordinary expense
of a severe fit of sickness, and might exhaust all their means be-
fore their health would be so far restored as to enable them to
resume their labour. And under the rule given it is not sure but
that all such persons would be subject to be removed whenever
the overseers of the poor should think proper. Upon a full con-
sideration of the case we are of opinion that a person is not liable
to be removed unless, at the time of making the order, there was
a prospect or a strong probability arising from circumstances then ex-
isting that he or his family would soon become chargeable to the town;
and that the charge of the court in this particular was erroneous.

There is another question arising in this case, which, as the cause
is to be removed to the county court for trial, it is necessary we
should decide. The court was requested to charge the jury
that, while the said Johnson was owner of his real estate, he could
not be removed to *Acton*, and, therefore, was not likely to be-
come chargeable to *Londonderry*. The court did not so charge
them, but charged them as before mentioned. This involves the
question whether a person owning and residing on his real estate
can be the subject of removal. If this can be done, it has been
well said that nothing would have a greater tendency to reduce
men to pauperism than to remove them from their homes and
property, and thus compel them to dispose of that property at any
price they could get, and that it would in fact operate as a con-
fiscation of their property. Indeed, it would contravene the first

R

WINDHAM,
February,
1830.

Londonderry
vs.
Acton.

article of our bill of rights,which enumerates among the natural,inherent,and unalienable rights,the enjoying,acquiring and possessing property.    And it would be a solecism in political science, that a man should be an independent freeholder, eligible to those official stations which it has been thought inexpedient to intrust to any except the owners of the soil, capable of sitting in the jury box, determining upon the lives, liberties and properties of his fellow citizens, and yet liable to be transported from town to town, as a pauper, until he is left in some town where accident has fixed the place of his settlement, there to be subject to the controul of the overseers of the poor who are to take effectual measures to prevent him "*from strolling into any other town or place.*"

If recourse is had to authorities to settle this question,it will be found that it has received repeated determinations both in England and this country.    The principle that a man cannot be removed from his freehold seems, in all the causes where it is mentioned, to be recognized as the settled law, and all the statutes which have been passed on the subject of the removal of paupers, have been made to yield to this well known and established principle.    Indeed, to reside on the freehold was considered as a right derived under *Magna Charta,* and one of which the person could not be deprived unless for crime.

By the *statute of* 13 *and* 14  *Car. II. c.* 12, the justices were authorized to remove any person who came to reside on a tenement under the yearly value of £10.    In some of the earliest decisions under this statute there was some doubt whether this £10 should be understood £10 *per annum* of an estate of freehold, or £10 rent as a tenant.    In a case in *Skinner,* the *King* vs. *Inhabitants of Stanmore,* 268, this question was made, and it was urged that it was unreasonable to intend that the act should remove a person from his freehold though under £10 *per annum,*and it was said that it had been so ruled by *North, Ch. J.* at the assizes in *Buckingham,* and *Holloway* said he had known it to be so adjudged ; but *Herbert,* the Chief Justice, was of another opinion, and the reporter says the other judges were silent.    This is the only case where any doubt was expressed on the subject. In the case of *Stanlock,* vs. *Bampton, Freem. Rep.* 432 decided in 1676, it was held that a man might go to his own house, though the value be ever so small, and an order to remove a man from his own house to the last place of his settlement was quashed.    The proposition, that a man may reside on his own freehold,and cannot be removed, it will be found, has been recognized in all the cases to the present

WINDHAM,
February,
1830.

Londonderry
vs.
Acton.

time. As a consequence of this it was decided that the statute of 13 and 14 *Car. II.*, intended only those who rented an estate of the yearly value of £10, and that those who resided on their own estate of whatever value were irremovable, and consequently settled in the parish where they so resided. *Lord Holt* had some doubts upon this question of settlement in the case of the *King* vs. *Inhabitants of Luckington, Comb.* 381, though he was satisfied there could be no removal, and he asked " if the descent of a rood of land should charge a parish with ten children." In the case of *Harrow* vs. *Edgeware,* 3 *Burns'* 413, and 19 *Viner,* 371, and in the cases of the *Inhabitants of Grandborough* vs. *Inhabitants of Mursely,—Ashbrittle Parish* vs. *Wyley Parish,* 19 *Viner,* 371, 372,—*Parish of Ryslip* vs. *Parish of Harrow,* 2 *Salk.* 524,— *King* vs. *Parish of Barclew,* 10 *Mod.* 430, it was decided and considered as settled, that a man could not be removed from his freehold, and that by residing thereon, though the value was ever so small, he gained a settlement where he so resided ; and we learn that this encouraged persons to make small purchases for the purpose of settling themselves in particular parishes. This inconvenience was remedied by *Statute of* 9 *George I. c.* 7, which provided that no person should acquire a settlement in any parish, by virtue of any purchase of any estate whereof the consideration does not amount to £30, *bona fide* paid, for any longer time than he shall inhabit such estate. When, however, the estate comes to a man by operation of law, his residence on it gives him a settlement of whatever value it may be, the same as it would before the statute of *George I.—King* vs. *Inhabitants of Houghton le Spring,* 1 *East,* 247 ;—*King* vs. *Inhabitants of Oakley,* 10 *East,* 491 ;—*King* vs. *Inhabitants of Staplegrove,* 2 *Barn. & Ald.* 527. It will be found, however, that a distinction has been taken between irremovability and settlement, and it has been holden that a person cannot be removed from his freehold although he has no settlement there, and although he actually applies to the parish for relief. In the case of the *King* vs. *Inhabitants of Aythrop Rooding,* it appears that a man settled at White Rooding went away, and that his wife and her children went and resided for forty days on his copy hold tenement in Aythrop Rooding, and she was removed from the latter parish as likely to become chargeable. In this case the distinction was taken between irremovability and settlement, and the court determined she could not be removed from her husband's property, as likely to become

WINDHAM,
February,
1830.

Londonderry
vs.
Acton.

chargeable : and it was remarked by *Justice Foster*, that a person's right to remain on his freehold was formed on *Magna Charta*. In the case of the *King* vs. *Inhabitants of Martley*, 5 *East*, 40, it was determined that a party residing on his own estate was not liable to be removed, though it was not of sufficient value to give them a settlement, although he had actually applied to the parish for relief. In the cases of *Inhabitants of Andover* vs. *Inhabitants of Salem*, 3 *Mass.* 436 ;—*Granby* vs. *Amherst*, 7 *Mass.* 1;—and *Somerset* vs. *Dighton*, 12 *Mass.* 383, it is distinctly admitted and recognized that a man shall not be removed from his landed estate,—that if warned to depart he may still continue his occupancy, but that he does not gain a settlement in consequence of being irremovable.

I have examined the authorities upon this subject more than would seem to be necessary to establish the principle ; but the question was never before presented for the consideration of the Court, and it is said that many gentlemen eminent in the profession have expressed a different opinion. On examination it is found that this principle is not derived from any expressions in the English statutes or the statutes of *Massachusetts*, as has been argued, but it is considered as a well established principle of the common law giving a liberty or privilege to the freemen to which the operation of those statutes is compelled to bend.

It is objected to this that it would be the occasion of fraud, and that paupers would have estates given to them to enable them to reside in a particular town. To this it may be answered that it is a well known maxim that fraud will vitiate every transaction, and a fraudulent act is as no act. And in many of the settlement cases it is considered that a residence or possession obtained or continued with a fraudulent intent will give no settlement—that a right cannot grow out of a wrong. 10 *Mod.* 393 ;—2 *Term*, 709 ;—2 *Barn. & Ald.* 527. And further, that no person can be chargeable while he has the means of supporting himself. When he has property either real or personal, he must first expend that in his own support before he can make any legal or effectual call upon the overseers of the poor for relief.

It results from this view of the case that the town of *Acton* was entitled to have the jury instructed, that Johnson, while living on his estate in *Londonderry*, was not liable to be removed to *Acton*, and more especially, as that estate was of the value of between two and three hundred dollars, and he but little in debt, in good

health, able and willing to maintain himself, and had never called on the town for support of himself or any of his family.

WIDNHAM,
*February,*
1830.

Londonderry
*vs.*
Acton.

　　　　　　　The judgement of the county court is reversed and a new trial is granted.

*Kellogg* and *Hubbard*, for Londonderry.

*Phelps* and *Bradley*, for Acton.