THE TOWN OF RUPERT *v.* THE TOWN OF WINHALL, *appellant.*

### *Settlement of paupers.*

Though the wife retains her maiden settlement and the children take that of the mother when the husband and father has none in the state, yet it is understood that, so long as he cohabits with his wife and maintains a family establishment, his wife and children cannot be removed from him.

But if the husband abandons his wife and his control over the family ceases, they may then be removed to the settlement of the wife, although that settlement was

derived by her from her father, or even from a more remote ancestor; and although the mother was under coverture and the children minors at the time the present law respecting their settlement came in force.

APPEAL from an order of removal of Austin Perham, a pauper from the town of Rupert to the town of Winhall. The following were agreed upon as the facts in reference to the pauper's · settlement :

Paul Perham, the father of the pauper, never had any legal settlement in this state. He was married to the pauper's mother, Rachel Vail, in Winhall, in 1837. She was the daughter of Edward Vail who always had his settlement in Winhall. The pauper's father and mother lived and cohabited together as husband and wife until the death of the mother, which occurred at Pawlet in 1849. At this time the pauper was a minor, and he afterwards went to reside and did reside in the town of Rupert, and became chargeable to that town, and after he became of age, but before he gained any legal settlement in Rupert, the order of removal in question was made.

Upon the foregoing facts the county court, June Term, 1856,— PIERPOINT, J., presiding,— decided that the pauper was duly removed, to which decision the defendant town excepted.

*A. L. Miner,* for the town of Winhall.

The mother of the pauper had no settlement in Winhall, or at most but a *derivative, contingent* one. The contingency depending upon the fact, whether she continued to live with her husband.

While she lived with him she had no settlement to which she or any of her children could be removed ; *Hartland* v. *Windsor,* decided last March in Windsor county, April No. Law Reporter, 706.

She continued to live with him till her death in 1849, the pauper then being a minor.

It would seem a palpable absurdity to hold that the death of the mother gave the child a settlement to which it might be. removed, which right did not exist while the mother lived.

*Burton & Burton,* for the town of Rupert.

The opinion of the court was delivered by

REDFIELD, CH. J.   The facts in this case raise a question somewhat similar to that which was decided in the case of *Hartland* v. *Windsor*, in Windsor county, at the last term.

Since the Revised Statutes of 1839 came in force legitimate children take the settlement of the mother if the father have no settlement in the state.   This was the rule of the common law. And in England cases may be found where the wife and children have been removed to the maiden settlement of the mother during the coverture and cohabitation.   The practice has been otherwise in this state.   So long as the husband and wife cohabit and maintain the family relations, it has here been considered that the family could not be broken up and the wife and children removed from the father and husband.   I am not aware that this has been expressly decided in this state, but it has been repeatedly said by the different members of this court, and the practice has certainly conformed to this rule, so far as I can learn.

But where the husband abandons the wife and family, or the control of the family on his part ceases, it has never been doubted, I think, that the wife or the children, either or both, may be removed to her settlement.   And I am not aware that it has ever been questioned that the children will take the settlement of the mother in such case, although she may not be in a condition to be removed at the time.   She is never in a condition to be actually removed until she is likely to become chargeable, but this will not hinder the children from taking her settlement.   And we see no reason why they should be any more hindered from taking the settlement of the mother by any other obstacle to the actual removal, as by her being *sub potestate mariti*, as it is called. Whenever the right to remove accrues, the removal may be made, but the suspension of the right of removal does not hinder the transmission of the settlement to the children.

Nor do we think it makes any difference whether the settlement of the mother is one she acquired in her own right, or a derivative settlement from her father, or even one derived through several generations.   It is the purpose of all these settlement laws to fix the settlement of the posterity indefinitely where that of the ancestor was.   And the same law is observed as to females, unless it is changed by taking that of another race or generation.

Nor will it make any difference, probably, that the pauper was an infant and the mother a feme covert, when the present statute came in force. The legislature may, no doubt, change the mode of supporting paupers thereafter to become chargeable, although they might not have that power as to those already chargeable to towns. They might enact that in future all paupers shall be maintained by the towns where they reside at the time of becoming chargeable.

Judgment affirmed.