### AT THE

### FEBRUARY TERM, 1864.

### [CONTINUED FROM VOL. 36, page 744.]

---

PRESENT:

Hon. ASA O. ALDIS,
Hon. JOHN PIERPOINT,  } ASSISTANT JUDGES.
Hon. LOYAL C. KELLOGG,
Hon. ASAHEL PECK,

---

## TOWN OF DUMMERSTON v. TOWN OF NEWFANE.*

### *Dower. Removal of Paupers. Husband and Wife.*

Under the statute of this State the widow's right of dower becomes a present vested estate on the decease of the husband, which does not depend on the contingency of the dower being assigned or set out.

The decision in the case of *Londonderry* v. *Acton*, 3 Vt. 122, where it is held that one is not liable to be removed as a pauper while owning and occupying a freehold estate, approved.

Where a wife has a freehold estate in dower, though not assigned, in a piece of land which adjoins the farm upon which she lives with her present husband, and has so lived since their marriage, and which has been occupied and improved by them together in connection with the said farm, and has contributed towards her support, it is *held*, that she is so far in the actual possession and occupancy of said land as to be irremovable from it as a pauper; and while she and her husband continue to live together he cannot be separated or removed from her under an order of removal.

---

* This case was argued at the February Term, 1862, and re-argued at the February Term, 1863, and the opinion was delivered at the present Term.

2

Dummerston *v.* Newfane.

APPEAL from an order of removal of H. N. Aldrich and family from Dummerston to Newfane. It was alleged in the order that said Aldrich was likely to become chargeable to Dummerston as a pauper. All that appeared in a statement of facts agreed upon by the parties in respect to said allegation was that the grand-mother and father of said Henry N. and some others of his blood relations, had been insane; and the said Henry N. was insane at the time of said order of removal, and had shortly before been a patient at the Vermont Asylum, but is now, and has been for some months, sane. The other facts agreed to are set forth in the opinion.

At the September Term, 1861, BARRETT, J., presiding, the court rendered judgment for the defendant,—to which the plaintiff excepted.

*A. Keyes,* for the plaintiff.

I. It is admitted by the case that the legal settlement of Aldrich at the time of the making of the order, was in Newfane. The wife, taking the settlement of her husband, was also settled in Newfane. The facts furnish " a present fair probability that he would soon become a charge upon the town." *Londonderry* v. *Acton,* 3 Vt. 122.

II. But the defendant town contends that Aldrich was at the time the owner of a freehold estate, from which he could not be removed; and stands upon the case of *Londonderry* v. *Acton.*

(*a.*) The decision in that case was not well considered, and ought to be revised; or at least ought not to be extended.

That decision was based upon MAGNA CHARTA and the English decision *construing* that charter. By that charter, as construed, no freeholder can be disseized of his freehold, except for crime, and then by verdict of jury, in due course of law. The English courts considered an order of removal from the homestead, to be a disseizin,—a conclusion founded more upon the peculiar state of the times, than upon any legal principle.

(*b.*) By our constitution and laws, every pauper likely to become chargeable is liable to be removed, and freeholders are not excepted, and our laws must prevail when they clash with foreign laws. When we made our constitution we engrafted into the declaration of rights, a part of the 29th chapter of Magna Charta, but carefully left out the words " *Nullus liber Homo disseisiatur de libero tenemento,*" &c.

Dummerston *v.* Newfane.

Dec. Rights, 24. By using a part and omitting a part, the part omitted is excluded.

III. It would seem, from the reading of the Charta, that the pauper must be seized of such a freehold, that the order of removal will operate a disseizin thereof. To remove him from his dwelling house would be ejecting him from his freehold and a disseizin under the Charter. But removing a pauper from one parish to another works no diseizin of his out lands, on which he does not reside, for it is no eviction therefrom. Hence the pauper must *reside on his frank tenement* in order to be irremovable therefrom. We think the decisions in England establish this doctrine. *Stanlock* v. *Bampton*, 19 Vin. 371; *Granby* v. *Musley*, 3 Burns, 414; *Ashbrittle* v. *Wiley*, 19 Vin. 372; *Burclear* v. *Woodbury*, 19 Vin. 373; *Aythrop Rooding* v. *White Rooding*, 3 Burns 424; *Leeds* v. *Blackfordby*, 3 Burns 425; *Rex* v. *Martly*, Smith R. 345; *Sandwich* v. *Heber*, Burr. Set. Cas. 7; *Rex* v. *Dunchurch*, do. 553; *Harrows* v. *Edgworth*, 19 Vin. 371.

The same doctrine is held by the decisions in this State. *Londonderry* v. *Acton*, 3 Vt. 122; *Middletown* v. *Pawlet*, 4 Vt. 202; *Brookfield* v. *Hartland*, 6 Vt. 401; *Walden* v. *Cabot*, 25 Vt. 522.

The cases of settlement have no application to the present case, for here the settlement in Newfane is admitted.

IV. The paupers were not seized of a freehold in the town of Dummerston. For the dower of Mrs. Aldrich has not been assigned. 1 Cruise Dig. 159; *Windham* v. *Portland*, 4 Mass. 384.

By Magna Charta she might remain on her deceased husband's estate during quarantine of forty days; so by statute of Mass. So by our statute, during settlement of the estate, or one year, the time allowed to settle the estate. But the privilege of residence gives no estate to the widow. It is merely a provision to save the widow and children from want.

Her right of dower is a mere chose in action and does not become an estate until dower assigned.

V. The widow before dower assigned has no estate to communicate to her second husband to enable him to gain a settlement or become irremovable. *Rex* v. *Painswick*, Burr. Set. Cas. 783 and Mansfield's note; *Rex* v. *Northweald Basset*, 2 B. & C. 724; *Rex* v. *North Curry*, Doug. 770 n.; 2 Bott. 477; *Rex* v. *Canford Magna*, 2 Har,

Dig. 5343; *Rex* v. *Axbridge*, 2 Har. Dig. 5343; *Rex* v. *Okeford Fitzpaine*, do. do.; *Rex* v. *Barnard Castle*, 2 Ad. & E. 108; *Windham* v. *Portland*, 4 Mass. 384.

*C. K. Field*, for the defendant.

KELLOGG, J. This was an appeal from an order of removal requiring Henry N. Aldrich, as a person likely to become chargeable to the town of Dummerston, to remove with his family and effects from that town to the town of Newfane. It is conceded that his legal settlement at the time of the making of the order of removal was in the town of Newfane, but it is claimed on the part of that town that his wife was irremovable from the town of Dummerston by reason of being in the actual possession and enjoyment of a freehold estate therein of which she was seized in her own right, when this order of removal was made, and that, consequently, her *status* of irremovability was communicated to her husband. It is settled in this State, by repeated decisions, that an order of removal can never be allowed to have the effect to separate the husband from the wife so long as they cohabit together in the family relation, and that an order which would require the removal of either from the other, and thereby break up the family relation between them, should be treated as void. *Hartland* v. *Pomfret*, 11 Vt. 440; *Northfield* v. *Roxbury*, 15 Vt. 622; *Rupert* v. *Winhall*, 29 Vt. 245; *Hartland* v. *Windsor*, 29 Vt. 354. The law recognizes no coercive separation of either from the other except for crime. If, therefore, the wife was, at the time of making this order of removal, irremovable from the town of Dummerston, it follows by a logical necessity that the husband was also then irremovable from that town,—it being agreed that they were then cohabiting together in the relation of husband and wife. This brings us to the consideration of the question whether she was seized and possessed of such an interest in the thirty acres of land of which her former husband, Charles Goss, died seized, as would render her irremovable at the time when this order was made.

It appears that Goss, at the time of his decease, left no other real estate except this piece of thirty acres, and that this piece was situated in Dummerston contiguous to and adjoining the farm which, after the marriage of his widow with Aldrich, was occupied by Aldrich up to the time of the making of this order of removal, and

that, during all that time, the thirty acres was used, occupied, and improved by Aldrich and his wife, although they did not actually reside upon it. As the widow of Goss, she was, *prima facie*, entitled to dower in his estate ;—at least, in the absence of evidence tending to show the fact, there can be no presumption that she was barred from claiming dower. This right of dower is a right to the use during her natural life of one-third of the real estate of which her husband died seized in his own right ; and by statute provisions, she is allowed, after the decease of her husband, to continue to occupy his real estate with his children and family until her dower shall be set out. Comp. Stat., p. 362, § 1,—p. 363, § 11. Gen. Stat., p. 411, § 1,—p. 413, § 10. In *Rex* v. *Inhabitants of Northweald Bassett*, 2 B. & C., 724,—9 E. C. L. 232, S. C.,—it is held that a widow, before assignment of dower, has not such an interest in the land of which she is dowable as to be irremovable from the parish in which the land lies. This is upon the common law theory that dower, until it is assigned, is a mere right of action, and not a right in possession. But we are agreed in the opinion that, under the statute of this state, the widow's right of dower becomes a present vested estate on the decease of the husband, which does not depend on the contingency of the dower being assigned or set out. Although her estate is a life estate, her right to the use of one-third of the real estate of which the husband died seized is as perfect, in every sense, as the right of the heir to the remainder. This rule of construction in respect to the widow's right of dower under the statute of this State has been adopted in repeated decisions made in this court. *Grant* v. *Parham*, 15 Vt. 649 ; *Gorham* v. *Daniels*, 23 Vt. 600.

In the case of *Londonderry* v. *Acton*, 3 Vt. 122, it was held that no person could be removed, or be the subject of removal, as a pauper from a freehold estate while owning and occupying it. In *Brookfield* v. *Hartland*, 6 Vt. 401, it was held that a tenant in dower could not be removed as a pauper from lands which she occupies as a tenant in dower ; and in *Walden* v. *Cabot*, 25 Vt. 522, a person in actual possession of a *trust* estate, and living on it with his family, was held not to be subject to removal as a pauper,—the rule being the same whether the estate is a *legal* or an *equitable* freehold. These cases show that it has been recognized in this court as a settled rule that

Dummerston *v.* Newfane.

a pauper cannot be removed from his freehold estate, and the rule makes a case excepted out of the statute. In cases affecting the liability of towns for the support of paupers, the maxim *stare decisis* is especially applicable. It is claimed by the appellee's counsel that the decision in the case of *Londonderry* v. *Acton*, was not well considered, and ought to be revised, inasmuch as it was based on English decisions giving a construction to the declaration in *Magna Charta* that no man shall be disseized of his freehold except for crime, and then only by a verdict of a jury in due course of law,—a declaration which, as is claimed, was never incorporated into our constitution or statute law. We think that the rule forbidding the removal of a person as a pauper from his freehold estate is a rule of humanity and policy. It is a tribute of respect to the feelings with which a person regards that which is his own,—to the attachment which is cherished for the associations of home and family,—and to the influences which connect the memories of better and more prosperous days with local scenes. It is a rule resting upon the best feelings of our nature for its foundation, and we think that the provisions in *Magna Charta*, which has been referred to, was intended not so much to confer a new privilege as to recognize one already existing. Mr. Justice FOSTER, in the case of *Rex* v. *Aythrop Rooding*, Burr. Sett. Cas. 412, suggested that this privilege of irremovability arose under the provisions of *Magna Charta*, but his language in that case distinctly implies that those provisions made no change in the common law as it existed previous to the time of *Magna Charta*. He says : " The husband himself would not have been removable from his own if he had gone to *Aythrop Rooding*. His right is under *Magna Charta*. ' None shall be disseized of his freehold,' &c. This woman was not become chargeable to *Aythrop Rooding*. If she had become actually chargeable to that parish, I think that by common law they must have maintained her. This is the common law so far back as from the time of *The Mirror.*" In that case, the wife was held to be irremovable from the *copyhold* (not *freehold*) tenement of her husband on which she was residing at *Aythrop Rooding*, although he was legally settled at *White Rooding*, and the language of Justice FOSTER attributes the *status* of irremovability to the rules of the common law quite as distinctly as it does to the provisions

*Magna Charta.* If the rule existed as early as the time of *The Mirror*, it is of much greater antiquity than *Magna Charta.* Bradshaw, " the King's attorney," in *Reniger* v. *Fogassa*, 1 Plowd. 8, refers to *The Mirror* as a book " which was made before the conquest," and its great antiquity is spoken of by Lord Coke in the Prefaces to 9 Co. and 10 Co. Marvin's Legal Bibl. 396. We think that the common law, independently of any provision in *Magna Charta*, was hostile to the coercive removal of a person from his property except for crime ; and that it was well said by Justice DENISON, in this case of *Rex* v. *Aythrop Rooding*, that " it is not agreeable to the liberty of mankind that a person should be removed from his own estate."

The wife of Aldrich was seized of a vested freehold interest or estate in dower in the thirty acres of which her former husband died seized, and had a right to occupy that land until her dower was set out. Was she in such actual occupancy or possession of it as would prevent her from being removed from it if she had been a *feme sole?* The dwelling house in which she and Aldrich resided after their marriage was situated on the farm occupied by him, and this farm was situated adjoining to the thirty acres ; but, from the time of her marriage to Aldrich up to the time of the making of this order of removal, the thirty acre piece was occupied and improved by him and her in connection with the farm on which they resided. It was contributory towards her support, and she and her husband received the profits from it, and they were as much in the actual corporal possession of it as if it had formed a part of the farm on which their dwelling house was situated. She was practically domiciled on the thirty acres, and the use and improvement of that land was hers as completely as it would have been if her dwelling had been upon it. We therefore regard her as having been so far in the actual possession and occupancy of the land in which she had this vested freehold estate in dower that she was irremovable from it ; and while she and her husband continued to live together, he could not be separated or removed from her under an order of removal.

The burden is on the town supporting an order of removal to show that the pauper was likely to become chargeable. The character or extent of the insanity of Aldrich does not distinctly appear in the agreed statement of facts. Whether he was in poverty and in need of

---

.relief, or was a man of wealth, or whether his insanity rendered him incapable of labor, cannot be determined upon any fact contained in this statement; and we think that it does nor distinctly or sufficiently appear that he was likely to become chargeable as a pauper. But we have felt that it was due to the great ability and research with which the argument in this case has been illustrated, that our decision should not stand upon any narrow ground; and, without reference to this point, we are satisfied that at the time of the making of this order of removal, the wife of Aldrich was irremovable from her freehold estate in dower in Dummerston, although her dower had not been assigned or set out, and that, as she and her husband were living together, her *status* of irremovability protected him from a coercive removal under the order in this case.

Judgment of the county court for the defendant affirmed.