THE TOWN OF DANVILLE v. THE TOWN OF WHEELOCK.

*Evidence. Pauper. Order of Removal. Abandonment of Wife by Husband.*

The fact that two years prior to the making of an order of removal the pauper was likely to become chargeable, is not evidence tending to show that he was in that condition at the time the order was made.

A witness testifying that he told another a certain thing, is not attesting that the fact was so, and that the witness had personal knowledge thereof.

If a husband and father be unable to support himself, but is supported by his family— his wife and children—which is self-supporting, he is not "likely to become chargeable" as a pauper; nor is he or his family subject to an order of removal.

Husband and wife separated by mutual agreement, and lived apart, but on friendly terms. She took the youngest boy and some of the furniture and went to live at her father's near by and in the same town where she and her husband lived, and supported herself and boy by working out. The husband and the eldest boy, twelve or fourteen years old, remained where they were living, and went about the county peddling, whereby they supported themselves, the wife in the meantime doing some of their mending and baking. *Held*, no abandonment of the wife by the husband, or legal separation, and that they could not be separated by an order of removal.

APPEAL from an order of removal of Israel P. Magoon and family from the town of Danville to the town of Wheelock, made on the 20th of March, 1873, for that said Magoon was likely to become chargeable to said Danville. Pleas, that said Magoon was not likely to become so chargeable, and that his last legal settlement was not in the town of Wheelock. Trial by jury, December term, 1873, Ross, J., presiding, and verdict for the plaintiff. The jury found by special verdict that said Magoon's settlement was, at the time said order was made, in said Wheelock, and that he was likely to become chargeable to said Danville.

The plaintiff gave evidence tending to show that at the time said order was made, Magoon and his family resided in Danville ; that he had never been a person of much property, but had supported himself and family, which consisted of himself, wife, and two sons, comfortably, till the fall of 1870, when he became sick and nearly lost his eyesight, at which time they were living in a house belonging to Walter Morse, Mrs. Magoon's father, without

8

any special bargain therefor. It appeared that in the spring of 1871, by mutual agreement between Magoon and his wife, they separated, and had since lived apart, though on friendly terms; that she took the youngest boy and some of the furniture and went to her father's, who lived not far from where they had been living; that since that time she had supported herself and the youngest boy, she being a woman of ordinary health, and working out most of the time, earning from $1.50 to $7 per week, the boy, meantime, remaining with her father. It was not claimed that she or the youngest boy was likely to become chargeable, of themselves, on the day the order was made. Magoon and the oldest boy, who was about twelve or fourteen, remained at the place where they had been living, till October 30, 1873,—said Magoon going about the country, led part of the time by the boy and part of the time going alone, peddling a few Yankee notions, and thus they supporting themselves. It appeared that his wife did some mending of his and the oldest boy's clothes, after she lived separate from them, and did some baking for them. The plaintiff's evidence also tended to show that at the time of making the order, Magoon's health was still poor, his eyesight nearly gone, and that he had but a limited amount of provisions, or of property of any kind, and was, when peddling, usually kept when away from home without charge. The plaintiff was allowed, against the defendant's exception, to show by said Morse that just before Magoon and his wife arranged to live separate, he went to the overseer of the poor of Danville, and told him that Magoon's family needed help from the town; that the overseer came and inquired into their circumstances and settlement; that Magoon insisted he did not want aid; that the overseer informed Mrs. Magoon that she would have to go to the poor-house, and probably have to be removed to Ludlow, where he thought Magoon's legal settlement was, if aided by the town, and that she thereupon declined to receive any aid, and that the separation was arranged soon thereafter. There was no evidence that Magoon had become actually chargeable, and it appeared that he was within a short time of gaining a settlement in Danville at the time the order was made. No question was raised, and the court was not asked to

instruct the jury, as to what persons would be included by the word *family* used in the order, except that the defendant requested the court to charge that if Magoon's wife was not likely to become chargeable, he was not liable to be removed to Wheelock, she remaining in Danville ; also, that the order of removal was repugnant to the 14th Amendment of the Constitution of the United States, and void. The court declined to so charge, and gave no instructions on either of said requests, but did instruct the jury on the question of whether Magoon was likely to become chargeable at the time the order was made, in a manner not excepted to, and also on all other questions arising in the case, except in regard to said requests. There was no controversy, and no conflict in the evidence, in regard to the manner in which Magoon with the oldest boy, and Mrs. Magoon with the youngest boy, had been living since the spring of 1872.

*B. N. Davis* for the defendant.

The issue, whether likely to become chargeable, was to be determined solely on the circumstances of the pauper on the 20th March, 1873, when the order was made. The justices in examining the case when brought before them, must determine whether .the pauper was likely to become chargeable, not in his condition two years before, but then ; and the testimony before the county court, to prove the same issue, ought to have been limited to the actual condition when the order was made. *Londonderry* v. *Acton*, 3 Vt. 122. The witness's opinion that the family needed help, was entirely inadmissible, as well as what the overseer said to the pauper. Testimony of the actual poverty of the pauper was inadmissible. See case above cited.

Was the husband liable to be removed, his wife remaining in Danville ? It has been repeatedly decided that the wife cannot be removed from the habitation of her husband. *Hartland* v. *Pomfret*, 11 Vt. 440 ; *Northfield* v. *Roxbury*, 15 Vt. 622.

The order was repugnant to the 14th amendment of the Constitution of the United States. One privilege or immunity of the citizen is, the choice of residence, or domicil, so long as he has not forfeited this right by an act of his own against the rights of

others. Without due process of law, to which the citizen is directly made a party, with a right to plead or be impleaded, to be heard, to confront the witnesses, and to produce witnesses in defence,—the citizen cannot be deprived of the right.

*Burke & Bates* for the plaintiff.

The jury found that Magoon was likely to become chargeable to the town of Danville, and the question is, whether or not he was removable to the place of his settlement. The case finds that neither Magoon or his wife had any real estate, or any interest in any, and that they had been living separate and apart since the spring of 1871, and that the wife was not under the control or protection of her husband, but lived with her father, and for the most part, supported herself. The law is well settled, that so long as the husband and wife continue to live and cohabit together, neither can be removed from the other ; but when the husband has left or abandoned his wife, and exercises no control over her, then a different rule obtains, and under certain conditions and circumstances, one may be removed from the other. *Northfield* v. *Roxbury*, 15 Vt. 622 ; *Rupert* v. *Winhall*, 29 Vt. 245 ; *Hartland* v. *Windsor*, Ib. 354 ; *Dummerston* v. *Newfane*, 37 Vt. 9. To hold that the husband, when a pauper, can not be removed to the place of his legal settlement, would work an injustice to the plaintiff, and relieve the defendant of a just and legal responsibility.

The opinion of the court was delivered by

REDFIELD, J. This was an appeal from an order of removal of "Israel P. Magoon and family," as likely to become chargeable to the plaintiff town. The order was made March 20, 1873, and the issue is as to the *status* of Magoon and family *at that time*. In the spring of 1871, Magoon and wife, by mutual agreement, separated—she, with the youngest boy, living with her father, and supporting herself and child by her work, and the husband and elder boy gained subsistence by peddling. The wife continued to aid the husband by mending his clothes and baking his bread. They lived apart, but in friendly relations, and in the

same town.   The wife earned from $1.50 to $7.00 per week ; and " it was not claimed that she, or the youngest boy, were likely to become chargeable, of themselves, at the time the order was made."

I.   Walter Morse, the wife's father, was allowed to testify, against the defendant's exceptions, that " just before Magoon and wife arranged to live separate, he went to the overseer of the poor of Danville, and told him that Magoon's family needed help from the town ; that said overseer came and inquired into their circumstances and settlement ; that the overseer informed Mrs. Magoon that, if aided by the town, she would have to go to the poor-house, and probably have to be removed to Ludlow, where he thought her legal settlement was ; that she declined to receive aid ; and Magoon insisted he did not want aid."   The witness does not state the fact that Magoon was poor and in need of relief in the spring of 1871 ; but that he so informed the overseer.   The fact, if it were true, that Magoon was likely to become chargeable to Danville in March 1871, does not prove or tend to prove, that he was in that condition two years afterward.   Besides, *notice* to the overseer of such condition, is not attesting that such, in fact, was his condition, and that he personally knew the fact.   We think this evidence, as the matter is stated in the exceptions, is not admissible.

II.   The court were requested by the defendant to charge, " that if the wife of Magoon was not likely to become chargeable, the husband was not liable to be removed to Wheelock, the wife remaining in Danville."   To this request the court made no response, and in no way defined what should be considered the *family* of said Magoon.   The *family* of Magoon was his wife and two minor children ; and if the *family* was self-supporting, it was not liable to an order of removal.   There are many cases where the husband and father is imbecile, and utterly unable to contribute to his own support, but the wife and children maintain and support the family.   In that case, the husband is not " likely to become chargeable," or subject to an order of removal.   Every member of this family were bound in moral and legal duty, individually and collectively, to contribute to the support of the

family; and if their joint efforts were sufficient to that end, that duty could not lawfully be cast upon any town. The mutual arrangement that the wife, with the youngest boy, should go to her father's, while the husband, with the elder boy, should essay to gain support by peddling Yankee notions, as promising the better return for their labor, was not an *abandonment* of the wife by the husband, or legal separation. The law does not allow the husband and wife to be separated by an order of removal, while the family relations subsist. In *Dummerston* v. *Newfane*, 37 Vt. 12, the court, KELLOGG, J., says : " The law recognizes no coercive separation of either from the other, except for crime. If, therefore, the wife was, at the time of making the order of removal, irremoveable from the town of Dummerston, it follows, by a logical necessity, that the husband was also then irremoveable from said town." See *Hartland* v. *Pomfret*, 11 Vt. 440 ; *Northfield* v. *Roxbury*, 15 Vt. 622 ; *Rupert* v. *Winhall*, 29 Vt. 245 ; *Hartland* v. *Windsor*, Ib. 354.

We think the court were called upon properly to explain the law upon this subject, and that the omission to do so was error.

Judgment reversed and cause remanded.