McCAFFREY vs. THE TOWN OF SHIELDS.

*March 18 — April 5, 1882.*

POOR LAWS.   *(1, 2) Legal duty of town in which pauper has residence but no settlement.   (3) When liable for relief furnished by private person.*

54  645
e109 350
109  353

54        645
53 LRA  616

1. Sec. 1512, R. S., must be so construed as to require the supervisors of a town, in the first instance, to provide for the support, etc., of a pauper resident in such town, but without a settlement therein, under the circumstances there mentioned.

2. Where a person resident in a town, without settlement therein, being mentally or physically disabled from earning a livelihood, and having no money to pay for the necessaries of life, goes into another town for a transient purpose only, the fact that such person does not actually require food, shelter and lodging at the public expense until he has passed into such other town, will not relieve the *town of his residence* from the duty of providing for him as required by said sec. 1512.

3. For relief furnished by a private person to one known to be a pauper and a legal charge upon a town, the town is not liable unless its supervisors, or at least two of them, have authorized the furnishing of such relief.   *Mappes v. The Supervisors,* 47 Wis., 31, distinguished.

APPEAL from the Circuit Court for *Marquette* County.

Action to recover for the board and lodging of one Caroline Kooch, alleged to be a pauper for whose maintenance the defendant town is chargeable.   The testimony tends to prove that the said Caroline became a resident of the defendant town in June, 1879; that she was a single woman, without means, and supported herself in whole or in part by her labor; that in February following she went into another town, Montello, and made a criminal complaint before a justice of the peace against her brother and his wife, residing in the town of Shields, for assault and battery; that it was necessary for her to remain there until the next day to attend the trial as a witness; that she had no means with which to pay for her food and lodging; and that the chairman of the board of supervisors of Shields procured the plaintiff to keep her at his hotel

under a promise that the town of Shields would pay him therefor, representing to him that the town was chargeable for her maintenance; also that another supervisor of Shields was present when such arrangement and promise were made. The plaintiff kept the said Caroline sixty days, and duly presented his bill therefor for $60 to the town board of Shields. The board refused to allow the bill, and the plaintiff brought this action to recover for her board and keeping, claiming $90 damages. The cause was tried in the circuit court; a judgment of nonsuit and for costs was rendered against the plaintiff; and he appealed from such judgment.

*Geo. E. Sutherland*, for the appellant.

For the respondent there was a brief by *S. A. Pease* and *Jackson & Thompson*, and oral argument by *Mr. Thompson*.

Lyon, J. 1. The alleged pauper, Caroline Kooch, had no legal settlement in the town of Shields, or in any other town of this state. The learned circuit judge ordered a nonsuit on the ground that public charity did not become necessary in her case until she was in Montello, and that, although her residence was in Shields, that town was not liable under the statute, and no act or agreement of its supervisors could render it liable. The evidence in respect to the condition and situation of Caroline is somewhat meager and unsatisfactory, but we think it tends to show that she was a person of weak mind, that she had no money or property with which to support herself, and was scarcely able to maintain herself by her labor. She had evidently quarreled with her brother and his wife, against whom she preferred a criminal charge, and presumably was without a permanent home, and dependent to some extent upon the charity of strangers for shelter and perhaps for subsistence. We are of the opinion that the evidence was sufficient to send the question whether she was a pauper to the jury.

If she was a pauper immediately after her arrival at Mon-

tello, where she went to make the criminal complaint against her brother and his wife, she was a pauper when she left the defendant town, and in that town. The mere circumstance that the demands of nature did not require that she should have food, shelter and lodging until after she had passed beyond the limits of the defendant town, is of no importance. The conditions which made her a pauper (if she was one) existed as well before as after she went to Montello. It may be that, had application therefor been made to the proper authorities of Montello, it would have been their duty to relieve her. But this does not excuse the town from whence she came from relieving her, if that town is otherwise under obligation to do so. Her residence was in the town of Shields, and she went to Montello for a mere temporary purpose, with the evident intention of returning at once to Shields. It seems clear to us that if she was a pauper in Shields, and if it was the duty of that town to relieve her had she remained there, it is not released from that duty merely because the first necessity for actual relief chanced to arise during her temporary absence.

2. The defendant town cannot be held liable in this action in any event unless its supervisors, or at least two of them (R. S., p. 1145, sec. 4971, subd. 3), requested the plaintiff to board and lodge Caroline. The case of *Mappes v. Supervisors*, 47 Wis., 31, does not hold to the contrary. There a pauper who was a county charge had been removed from the poor-house, where she had been for several years, by order of a superintendent of the poor, and had been refused a home with her relatives. The plaintiff cared for and relieved her, not knowing she was a pauper. The circuit court held that he could recover for her support until he discovered she was a pauper, and until a reasonable time thereafter had elapsed to enable him to notify the county authorities that he was relieving her, and for no longer time. On the appeal of the county, this court affirmed a judgment for the plaintiff. It is manifest that the case furnishes no rule to govern the present case.

Without stating the testimony on the subject, we think it tends to show that the chairman of the board of supervisors of the town of Shields, with the implied assent of another supervisor of that town then present, requested the plaintiff to keep Caroline. If the proofs leave the matter in doubt, it is a proper question for the jury. We think it is no obstacle in the way of a recovery in this action, that the request was made in Montello and not in Shields. If it was the duty of the latter town to relieve Caroline, the supervisors could lawfully contract for her relief wherever she might be.

3. This brings us to consider and determine whether the statute made it the duty of the defendant town to relieve Caroline, if it be determined that she was a pauper. If no such obligation was imposed by the statute, the supervisors could not bind the town for her maintenance by any contract they might enter into in that behalf.

There is no evidence, and it is not claimed, that the distinction between town and county poor has been abolished in the county of Marquette, in which the town of Shields is situated. The county, therefore, is only liable for the support of such paupers therein who have no legal settlement in any town in this state. R. S., p. 460, sec. 1517. Each town is liable for the support of all paupers having a legal settlement therein. Section 1499. If the pauper becomes a charge upon any town other than that in which he has a legal settlement, the former town is primarily and the latter is ultimately chargeable for his support. Section 1513. Section 1512 provides that certain classes of paupers, for whose relief the county is ultimately chargeable, shall in the first instance be relieved by a town in certain contingencies. In this case Caroline, the alleged pauper, had not resided in Shields, or in any other town in this state, for one year; hence she had acquired no legal settlement in any town. Section 1500, subd. 4. She was therefore a county charge, if a pauper.

Section 1501 requires the supervisors to relieve all poor per-

sons in their town "so long as they remain a town charge," but does not define what classes of paupers shall be a town charge. To ascertain that we must look to other provisions. If the defendant town is liable in this action, it is so because Caroline is a pauper belonging to some class specified in section 1512, which the town must primarily relieve, having a remedy over against the county. Our inquiry must be, therefore, Assuming that she is a pauper, does she belong to a class specified in section 1512? The material portion of the section is as follows: "When any person not a resident, nor having a legal settlement therein, shall be taken sick, lame, or otherwise disabled, in any town, and shall not have money or property to pay his board, attendance and medical aid, the supervisors shall provide such assistance to such poor person as they may deem just and necessary, and if he shall die they shall give him a decent burial. They shall make such allowance for such board, nursing, medical aid and burial expenses as they shall deem just, and order the same to be paid out of the town treasury."

The portion of the section here quoted takes the place of section 20, ch. 34, R. S. 1858; but the phraseology of the latter section is somewhat changed. That section provided that, "when any non-resident stranger, or any other person, shall be taken sick, lame, or become otherwise disabled, in any town in this state, having no legal settlement therein," etc., continuing as in the revised section 1512. The original section includes a pauper, otherwise within its provisions, who is a resident of the town in which he becomes sick or disabled. But it is argued that the revised section, by reason of the omission therefrom of the words "or any other person," excludes a resident pauper, not having a legal settlement in such town, from the operation of the statute. This does not necessarily result from the language employed in the revised section. The section may reasonably be construed to include two classes of paupers: (1) Those who are not residents of the town, and

who presumably have no legal settlement therein; and (2) those who, although residents of the town, have no legal settlement therein. It may be true that, looking at the words alone, the more natural construction would be that contended for by the learned counsel for the defendant. But when the meaning is doubtful and the statute admits of construction, as does this statute, we must look further and ascertain if we can the sense in which the legislature used the words. When that is ascertained it controls the construction, provided no violence be done to the language of the statute.

If the construction contended for prevails, the second class above mentioned, to which the alleged pauper in this case belongs, if she is otherwise within the statute, will be entirely excluded, and the only source to which she can apply for relief is to the county authorities. The county board *may* make such rules and regulations as it may deem proper in relation to the support of poor persons whose maintenance is a county charge; it *may* buy or rent suitable lands and buildings, and maintain such poor persons on and in them; and it *may* appoint an agent to take charge of such land, buildings and poor persons. R. S., secs. 1517, 1518. But no law compels the county board to do any of these things. There is no suggestion in this case that the county board of Marquette county has ever done any of them. It results that there may be no opportunity to invoke the action of the county board for the relief of a pauper chargeable to the county, except during the brief annual meeting of the board, no matter how pressing the necessities of the case may be.

It was said by the present chief justice in *Mappes v. Supervisors, supra*, that the intent of these statutes is "to guard against the danger of any one unable to support himself being left without the very means of sustaining life." Undoubtedly this is true. But if the construction of section 1512 contended for should prevail, a very large class of paupers would be left in that unfortunate situation. Unless the statute is

construed to include them, those paupers who are residents of the town in which their disability happens, but having no legal settlement therein, might not be relieved until the aid of the county board could be invoked, no matter how urgent the case or how distant the time of the next meeting of the board. It is manifest that the legislature intended no such disastrous result. Moreover, the revisers' notes show that they did not intend by the change of phraseology to change the law as contained in the statute of 1858. For the reasons above suggested, it must be held that the class of paupers to which the alleged pauper in this case belongs (if she be a pauper) — that is, those who are residents of the town where the disability exists, but who have no legal settlement therein,— are within the provisions of the section, and should be relieved in the first instance by the town.

The term "otherwise disabled," as used in section 1512, means bodily or mental disability to procure a livelihood. The testimony in this case, although conflicting, tends to show that Caroline is so disabled by reason of mental infirmity verging on imbecility. Whether such disability exists is a question of fact for the jury. If she was thus disabled before she went to Montello, the undisputed evidence proves that she was then a pauper; and if the chairman of the board of supervisors of the defendant town, in the presence of and with the assent, express or implied, of another supervisor of that town, and in behalf of the town, requested the plaintiff to keep such pauper, the town is liable in this action.

We do not determine the measure of damages in case the plaintiff recovers. Probably he should recover no more than he claimed of the town. Whether he can recover only for keeping Caroline one day, or for the whole sixty days, may depend upon his agreement or understanding with the supervisors, and their future course in relation to a removal of the alleged pauper.

*By the Court.*— The judgment of the circuit court must be reversed, and the cause will be remanded for a new trial.