BUTTERWORTH HOSPITAL v. SUPERINTENDENTS OF POOR OF KENT COUNTY.

PAUPERS—REMOVAL OF PAUPERS—LIABILITY FOR HOSPITAL TREATMENT—MUNICIPAL CORPORATIONS.

   County to which indigent persons were removed for hospital treatment after they became indigent is not liable to the hospital for such treatment (2 Comp. Laws 1929, § 8274).

Error to Kent; Perkins (Willis B.), J. Submitted January 14, 1931. (Docket No. 128, Calendar No. 35,405.) Decided April 7, 1931.

Assumpsit by Butterworth Hospital, a corporation, against Superintendents of Poor of Kent County, a corporation, for the hospital care of three indigent patients. Judgment for defendant as to two patients. Plaintiff brings error. Affirmed.

*Butterfield, Keeney & Amberg,* for plaintiff.

*Bartel J. Jonkman,* Prosecuting Attorney, and *Arthur R. Sherk,* Assistant Prosecuting Attorney, for defendant.

BUTZEL, C. J. Plaintiff Butterworth Hospital, located at Grand Rapids, Kent county, Michigan, brought suit against the superintendents of the poor of Kent county, a corporation, defendant herein, to recover for the care of three indigent patients. The

trial judge who heard the case without a jury found defendant liable for the care of one of the patients, a resident of Kent county, but not for the other two, John Gargeich and Goerto Satrornino. He held that inasmuch as their indigency and need of immediate assistance had arisen prior to their removal to Kent county, of which they were nonresidents, no liability could be imposed upon defendant. Plaintiff has appealed.

It is claimed that Gargeich's home is in Chicago. He was working on a farm near Wayland, in Allegan county, Michigan, when he met with a very severe automobile accident. He suffered severe bodily injuries, including a fractured femur. He was taken by friends to plaintiff hospital in Kent county, and not to Allegan, the county seat of Allegan county. Wayland is but a few miles further from Grand Rapids than it is from Allegan.

Satrornino was suffering from encephalorrhagia, which resembles and is frequently confused with "sleeping sickness." He was indigent when he became afflicted with this disease at Thompsonville, in Benzie county, a long distance from Kent county. In the belief that a difficult surgical operation was necessary, he was transported to plaintiff hospital. There is no claim that he had a legal settlement in Benzie county. His residence is not disclosed by the record. It only shows that he was working with a crew of men on the Pere Marquette railroad at Thompsonville, Michigan, where they were living in box cars.

Both of these patients were indigents and in an extremely serious physical condition both before and after they were brought to plaintiff hospital. It would have been inhuman for plaintiff to refuse them first aid if not also subsequent treatment. It

took months for Gargeich to recover.  Satrornino died 11 days after his arrival at the hospital.

It was shown that plaintiff is supported by public or private subsidies and its chief purpose is to take care of the people of Kent county.  There is no doubt but that it would be a very great hardship upon any hospital to be compelled to accept free patients from all over the State.  It would be unfair to a county to be compelled to pay for the care of paupers brought to it from other counties where they had no legal settlement but where their indigency arose and must have been known.  It is apparent that both of these patients were transported to plaintiff hospital on account of its superior facilities and not with the intention of relieving the responsibility of the counties where their indigency arose.  Shortly after the patients arrived, plaintiff hospital served notice upon defendant that it was caring for them.  Bills were sent to defendant, which it refused to honor but it failed to return them.  It at no time acknowledged itself as either responsible or willing to pay for the care of these patients.  On the contrary, it asserts that it is not liable.  Plaintiff claims liability on the part of defendant under the following subsections of section 8274, 2 Comp. Laws 1929:

"SECTION 1.  When any person applies for or requires relief and support as a poor person, in any county, township or city, the superintendents of the poor of the county, or the supervisor or director, as the case may be, shall ascertain the township, city, county or State in which such poor person is settled, and relief and support of such person shall be granted, as follows:

"First, If such settlement cannot be ascertained or is in another State or country, the relief and

support of such poor person shall be at the expense of the county in which he may be; * * * *

"Third, If it is ascertained that the settlement of any such poor person is in another county or any other township or city of any other county, relief and support of such poor person shall be granted by the superintendents of the poor of the county where such poor person may be, at the expense of the county where such poor person has a settlement, or the county in any township or city of which county such poor person has a settlement."

Our attention is called to the case of *Superintendents of Poor of Kalkaska County* v. *Superintendents of Poor of Grand Traverse County,* 120 Mich. 247, in which plaintiffs failed to recover from the defendants for the care of an indigent who had his home in defendant county.

Plaintiff relies on the case of *Superintendents of Poor of Livingston County* v. *Superintendents of Poor of Oakland County,* 141 Mich. 667, where the defendants were held not liable for the support of an indigent person because when the latter moved to plaintiff county the removal was not brought about by the defendants with the intent of making her a charge upon the poor authorities of plaintiff county. The facts are different from those in the present case.

Plaintiff relies on the case of *City Hospital of Quincy* v. *Milton,* 232 Mass. 273 (122 N. E. 274), ' where the circumstances are somewhat similar to the present case. Plaintiff calls our attention to the case of *Eckman* v. *Township of Brady,* 81 Mich. 70 (1890), where the township in which the indigent had a legal settlement was held liable for her care by a private individual who furnished her with support which the township had neglected to give. This

case was decided at a time when conditions were different from those of the present day and when indigency and delinquency were infrequent and could be readily localized and the responsibility for support could be properly charged. There were not the present day methods of quick and cheap transportation, nor was there the migration from city to farm and back again, nor the constant shifting of part of the population from one place to another. In *Eckman* v. *Township of Brady, supra,* the indigent also had a legal settlement, and we do not believe the principle set forth in that case can be extended so as to apply to the case at bar. In the present case the indigency arose in other counties where the indigents were at the time they required support. Plaintiff knew this fact when it received the patients. They had no legal settlement in Kent county. Subdivision 1 of section 8274, 2 Comp. Laws 1929, does not contemplate that the relief and support of such poor person without a legal settlement and whose home cannot be ascertained shall not only be at the expense of the county where he may be but also of the county to which he may be transported after the indigency has arisen. Such a construction would lead to the imposition of an unjust burden upon the county to which the poor person might have been transported. If there is any liability at all, it is against the counties in which the indigents were when they became public charges. See *McCaffrey* v. *Town of Shields,* 54 Wis. 645 (12 N. W. 54). This we do not determine as the question is not before us.

The judgment of the lower court is affirmed, but without costs.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.