INHAB'NTS OF CORNISH *versus* INHAB'NTS OF PARSONSFIELD.

The Stat. 1821, c. 122. § 15, (Rev. Stat. c. 32, § 35) does not authorize the removal, to the place of their lawful settlements, of those persons who might be considered as likely to become chargeable as paupers at some future and as yet uncertain time; but authorizes their removal only, when the fact whether they were likely to become chargeable, would not depend upon a contingency, but upon an ascertained necessity.

THIS was a writ of error, brought to reverse a judgment of the District Court, wherein the plaintiffs were complainants, and the defendants were respondents, originally commenced before a justice of the peace.  In that complaint the inhabitants of Cornish alleged, that one Thomas Parsons, his wife

and certain of his minor children, who were named, had their legal settlement in Parsonsfield; that they were then resident in Cornish; that "they were poor and likely to become chargeable to said town of Cornish through the infirmity of said Thomas Parsons, he being subject to fits, and otherwise infected with disease;" and prayed that their settlement might be adjudged to be in Parsonsfield, and that they might be removed thither.

At the trial in the District Court at May Term, 1840, before WHITMAN J. it was proved, as appears by the record, that Thomas Parsons, named in said complaint, removed from Parsonsfield to Cornish about four years before that time, and for ten or twelve years has been subject to epileptic or convulsive fits. He and his family received assistance from the town of Parsonsfield, as paupers, about three or four years to the amount of sixty dollars each year, before he moved from that town. He is a man of good habits and steady, his wife is able and smart and capable, and attends to out door and other business; their oldest son is fifteen years old, and is hired out for seven months at five dollars per month; they have only one child at home at present, a lad five years of age; their children are healthy; Parsons now lives in a house hired for him at nine dollars per year, which his neighbors have in charity agreed to pay for one year, and at that rate for any less time; he and his family are charitably assisted to wood and provisions by their neighbors and friends in various ways, but not to the amount of the twentieth part of their support; he would not be able without the aid of his wife to support himself, but could do something towards it by laboring on the land, although his ability to do so has been gradually declining from the repitition of his fits; that they have had four children, and two, a boy eight years old and a girl eleven years old, are put out to live with a good man and a farmer, where it is hoped they will remain and be provided for, the man having agreed to keep them if he should like them.

The Court adjudged, that they were not likely to become

chargeable to said town of Cornish, within the true meaning and intent of the statute in such case made and provided.

*Jameson,* for the plaintiffs, said that the decision of the case depended upon the construction to be given to the statute c. 122, § 15. This statute expressly provides for the removal to the place of their settlements of such as " are likely to become chargeable to the places wherein they are found," from the causes mentioned, one of which is infirmity. The infirmity of Parsons is most clearly shown. He had been " subject to convulsion or epileptic fits for ten or twelve years," and " been gradually declining from the repetition of his fits."

The liability to become chargeable was impending, and he must soon actually become chargeable. This is all that the statute requires for the removal.

He had been supported by Parsonsfield as a pauper for years and until he left that town ; at the time the complaint was filed, he was unable to support himself, and his own family were unable to do it ; his house rent and a portion of his wood and provisions were paid for and gratuitously furnished by his neighbors and friends. Take away these charities, and he will be found houseless, helpless, and again a town pauper. The statute does not require, that the person should have actually become chargeable. It provides for the removal of two classes, those actually chargeable, and those likely to become so. This is believed to be a very clear case of the latter description.

*McIntire* argued for the defendants, and contended, that the true meaning of the latter part of the clause of the statute is, that to authorize the removal of individuals, not actually chargeable, that such individuals must necessarily immediately become so. There must be a strong and almost inevitable certainty of immediate expense to the town, and not a mere contingency that such may be the case at some future indefinite time.

The construction contended for by the plaintiffs tends strongly to increase pauperism by intermeddling with the pursuits and voluntary location of families, when supporting themselves ; breaking in upon their daily avocations ; breaking down the moral feeling of self dependence ; destroying the means of

self support; and actually making paupers, and creating pauper expenses, when none is afforded to the alleged paupers.

The abuse of the power which might, and probably would take place by the town officers, especially in warm political party times, on the construction contended for by the plaintiffs, was strongly exhibited, and strenuously urged, to show that the legislature never intended to grant so extensive and indefinite a power.

The opinion of the Court was afterwards drawn up by

SHEPLEY J. — This is a writ of error sued out according to the provisions of the former statute, c. 122, § 16, to correct an error alleged in a judgment of the District Court. The decision must depend upon a construction of that clause in the fifteenth section of the statute, which declares, "that all persons actually chargeable, or who through age or infirmity, idleness or dissoluteness, are likely to become chargeable to places, wherein they are found, but in which they have no lawful settlement, may be removed to the places of their lawful settlements, if they have any within the State." If the intention was to authorize the removal of those persons, who might be considered as likely to become chargeable at some future and as yet uncertain time, the persons named in the complaint, or some of them would seem to be included. But if the intention was to authorize their removal only, when the fact, whether they were likely to become chargeable, would not depend upon a contingency, but upon an ascertained necessity, then they should not be considered as included.

The argument is not without weight, that the phrase, likely to become chargeable, cannot properly be restricted to cases of ascertained necessity. It might, if considered alone, well receive a construction more comprehensive. It must however be considered in connexion with other language used in the section. And the whole should be so imperative, as necessarily to require it, to authorize a construction, which might subject persons to the loss of present rights and comforts; place them under restraint, and occasion present suffering, for fear, that

Cornish v. Parsonsfield.

they might sooner or later be brought to that condition. In the form of the warrant for a removal of the person, the overseers of the poor of the town to which he is removed, are "required to receive and provide for him as an inhabitant of that town." And then follows in the enacting clause the provision, "and such overseers shall be obliged to receive and provide for such person accordingly." There is in this respect no distinction between those, who are actually chargeable, and those, who are likely to become chargeable. Both classes, as soon as they are removed, are regarded as the proper subjects for support or assistance from the town. The person is by the very act of removal, deprived of his rights and made a pauper. And there must be an ascertained necessity to subject a person to the control of the overseers, and to impose an obligation upon the town to provide for him. For the plaintiffs in error it is contended, that the family without the aid of charity, would be houseless and helpless, and unable to obtain a support. That there was an impending liability to charge, neither remote nor contingent. And that inability to support themselves makes them paupers. Opposed to this, is the fact, that they had not received assistance from any town for the four preceding years. Although they had at an earlier period received assistance, when the children were younger and more helpless, they had proved the possibility of obtaining a subsistence without it. While the father by age and increasing infirmity was becoming less able to contribute, the children were becoming more useful and their services more valuable. Under such circumstances the Court cannot conclude, that there was an ascertained necessity for assistance from the town. And they should not be deprived of the privilege of selecting their own place of residence, and of enjoying the rights and comforts connected with a support obtained by their industry and exertions without such an ascertained necessity.

Judgment affirmed.