SUPERINTENDENTS OF POOR OF LIVINGSTON COUNTY *v.* SUPERINTENDENTS OF POOR OF OAKLAND COUNTY.

1. PAUPERS—WHO ARE PAUPERS.

Persons who, when they removed from one county to another, were well and strong, had considerable household furniture, some $60 in money, and sufficient provisions to support themselves and their family a few months, were not then paupers.

2. SAME—RIGHT TO SUPPORT.

Where a woman with several children was deserted by her husband after moving into a certain county with him, and needed help in supporting herself and children, it was the duty of the poor authorities of such county to furnish her with aid. Section 4502, 2 Comp. Laws.

3. SAME—REMOVAL OF PAUPERS—LIABILITY FOR SUPPORT.

The superintendents of the poor of one county, after supporting a pauper therein for some time, procured transportation for her to another county, and had her removed to that county on her request and assurance that she had friends in that county who would take care of her. After her removal she became a charge on the county to which she was removed. *Held,* that, since the removal was not brought about with intent to make her a charge on the county to which she was removed, the superintendents of the poor of the county who caused such removal were not liable under sections 4514–4518, 2 Comp. Laws, for her support by the county to which she was removed.

Error to Oakland; Smith, J. Submitted October 4, 1905. (Docket No. 6.) Decided November 9, 1905.

Assumpsit by the superintendents of the poor of Livingston county against the superintendents of the poor of Oakland county to recover an amount paid for the support of an indigent family. There was judgment for defendant, and plaintiff brings error. Affirmed.

*Edmund C. Shields*, for appellant.

*Rockwell & Zimmermann*, for appellee.

MOORE, C. J. This is a suit commenced to recover sums of money expended for the support of a poor person. The case was tried before the circuit judge, who made the following findings:

### "FINDING OF FACTS.

"Some time prior to December 27, 1899, one Annie Schram had married one Lon Johnson, and had separated from him, and was living in the village of Howell, Livingston county, Mich. She had two small children. Prior to December 27, 1899, she had received considerable help as an indigent poor person from the supervisor of the township of Howell. On the 27th day of December, 1899, at the village of Howell, she was married to one William Wood. They lived together as husband and wife in the village of Howell continuously until some time in March, 1900. Mr. Wood was away from home for three or four weeks during that time looking for a farm upon which they could move and live. He returned to Howell, and some time in March, 1900, Mr. and Mrs. Wood moved to a farm in the township of Brighton, Livingston county, Mich.

"Subsequent to December 27, 1899, the township board of Howell paid a rent bill and a bill for some wood furnished Mrs. Johnson; Mrs. Johnson and Mrs. Wood being the same person. Those bills seem to be for items furnished to Mrs. Johnson, and allowed by the township board, and paid for a long time after they were furnished.

" Mr. and Mrs. Wood lived in the township of Brighton on a farm until March 20, 1902, and they received no help

whatsoever from any poor authorities while in Brighton. Both Mr. and Mrs. Wood were healthy and strong. Mr. Wood had sufficient work at Brighton to support the family. They moved from Brighton to the village of South Lyon, Oakland county, on or about March 20, 1902, taking with them these small children of Mrs. Wood.

"At that time Wood had about $40 in money and Mrs. Wood about $20. They also had sufficient potatoes, pork, flour, and provisions, such as raised on a farm, to support the family a few months.

"They also had household furniture to an amount which, with the provisions mentioned above, made three loads. They paid the cost of the teams in moving. It is said Wood made the statement when moving that they had enough to keep themselves at South Lyon six months if he did not get a day's work. His statement was not strictly accurate. It probably referred to the items of flour, pork, and potatoes, or else he intended to include the money above mentioned. Both Mr. and Mrs. Wood were at that time able-bodied persons and healthy.

"Wood worked a little at South Lyon, but within two or three weeks abandoned Mrs. Wood and her children, and then ceased to support them. He left South Lyon, and returned to Brighton, Livingston county. He worked thereafter in several places, but returned to South Lyon only for two or three short visits with his family, and, before September 24th following, had ceased visiting his family, and has not since lived with nor supported his wife.

"Sometime in April, 1902, Mrs. Wood applied to Frank Vowels, supervisor of the township of Lyon, in which the village of South Lyon is situated, for aid for herself and children. It was furnished and continued during the summer. In September she stated to Mr. Vowels she preferred to live at Howell, where she had friends, and wished to go there, but had no money to pay the cost of moving, and asked for aid for that purpose.

"After consultation with the poor commissioners of Oakland county Mr. Vowels, as supervisor, on September 24th, furnished the tickets for transportation of Mrs. Wood and her children from South Lyon to Howell, and gave them to her. He also paid the drayage for hauling her household goods to the depot in South Lyon and freight on goods. These expenses were paid by the poor commissioners of Oakland county. Mrs. Wood had no money at that time.

"It is claimed by the plaintiff that when Mr. Vowels was asked for transportation he refused it until Mrs. Wood promised not to return to South Lyon, but the evidence taken in this court fails to substantiate the claim.

"November 5, 1902, Mrs. Wood applied to the supervisor of the township of Howell for aid for herself and children, and was furnished appropriate aid to the amount involved in this suit.   Her husband was at that time a resident of the county of Livingston.

"November 29, 1902, plaintiff gave notice to the defendant as required by sctions 4516, 4517, 2 Comp. Laws, and on December 29th the defendant served notice denying liability.

### "FINDING OF LAW.

"That on the foregoing facts the defendant is not liable to plaintiff."

There are assignments of error in relation to the question of pleadings and upon the admission of testimony. It was stated, however, upon the oral argument, that a decision upon the merits was desired.   The question, then, is whether, upon the state of facts found by the circuit judge, he was right in holding that the defendant is not liable.   It is the claim of counsel for plaintiff that under the provisions of sections 4514 to 4518, 2 Comp. Laws, defendants are liable.   We think it very clear that when Mr. and Mrs. Wood moved to Oakland county they were not paupers.   It was not until after Mr. Wood deserted her that Mrs. Wood needed help from the poor authorities. It is equally clear that it was then the duty of the poor authorities of Oakland county to furnish her with aid. See 2 Comp. Laws, § 4502; *Superintendents of Poor of Kalkaska Co.* v. *Superintendents of Poor of Grand Traverse Co.*, 120 Mich. 247.

Did the removal of Mrs. Wood to Livingston county, under the circumstances found by the circuit judge, bring the case within the provisions of sections 4514 to 4518, 2 Comp. Laws, as claimed by counsel for the plaintiffs ?   A reference to these sections will show that the intent with which the removal is brought about is a very important

item.  It would be necessary, in order to secure a conviction under section 4514, to show that the intent existed to make the county to which the removal was made chargeable with the support of the pauper.  A like intent must be shown before the poor authorities from which the pauper came can be charged with his or her support.  See *Superintendents of Poor of Kalkaska Co.* v. *Superintendents of Poor of Grand Traverse Co.*, 120 Mich., at page 249.  In this case the court did not find an intent on the part of the poor authorities of Oakland county, in aiding Mrs. Wood to move to Livingston county, to make her a charge upon that county.  The record shows that Mrs. Wood had lived in Livingston county a great many years.  Her friends and acquaintances all lived there.  Mr. Vowels testified that Mrs. Wood requested him to furnish means to enable her to go to Livingston county.

" *Q.* And what is the fact as to your making any suggestion to her with reference to her going back?  *  *  *

" *A.* I asked Mrs. Wood if there was any one there to take care of her, provided she was furnished transportation.  She said if she could get to Howell she would be all right, as she had friends there.  I asked her that question after she asked for transportation.  I am sure I did not make any suggestion of that kind before she asked for transportation to Howell.  I did not advise her to go back, or anything of that kind.  To the best of my recollection I did not ask her to go back, and no one else asked her under my instructions that I know of, or within my knowledge."

Dr. Henry, who purchased the tickets, says:

"Mrs. Wood repeatedly assured Mr. Vowels that, if she could only get back to Howell, where the friends and acquaintances of herself and husband lived, she would better her condition and would be able to obtain sufficient employment to enable her to support and maintain herself and children."

Mrs. Wood's testimony upon the trial does not seriously controvert this, though she made a very different statement to the poor authorities of Livingston county.  We think the testimony would not fairly justify the inference

that the removal of Mrs. Wood was brought about with the intent to make her a charge upon the poor authorities of Livingston county, but that her return was voluntary.

Judgment is affirmed.

CARPENTER, GRANT, MONTGOMERY, and HOOKER, JJ., concurred.