(Supreme Court, Trial and Special Term, Tompkins County. September, 1915.)

PAUPERS ⊂⊃1—LIABILITY FOR SUPPORT—"POOR PERSON."

    A laborer, who never before had received poor relief, and who lived a nomadic life, going from place to place, was in the spring of 1914 given aid by the defendant county while temporarily ill. After his recovery he returned to work, supporting himself for some months, and thereafter he went to plaintiff county to obtain work. While there he again became ill and, his funds being exhausted, he had to be given aid. The distinction between the town and county poor had been abolished in the defendant county, but not in the plaintiff county. Poor Law (Consol. Laws, c. 42) § 42, declares that every person except the state poor shall be supported in the county or town where he may be, that if he has gained a settlement in any town or city he shall be maintained by such town or city, that if he has not gained a settlement he shall be relieved at the expense of the county, and that if the distinction between town and county poor is abolished he shall be supported at the expense of the county. Section 40 declares that every person of full age, who shall be a resident and inhabitant of any town or city for one year, shall be deemed to have settled therein, and shall so remain until he shall have gained a like settlement; while section 51 provides that a poor person, who shall be removed or shall stray from one city, town, or county into another, shall be maintained by the county superintendents of the county where he may be, and that they may give notice to the county superintendents of the county from which he came requiring them forthwith to take charge of such poor person. Held, that the laborer, although not accumulating property, was not a "poor person," within section 2, defining a poor per-

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

son as one unable to help himself, and, not having gained a settlement in the defendant county because of his temporary relief, plaintiff county was bound to maintain him; the town in which he was taken ill not being liable.

[Ed. Note.—For other cases, see Paupers, Cent. Dig. §§ 1–8; Dec. Dig. ☞1.

For other definitions, see Words and Phrases, First and Second Series, Poor Person.]

Action by the County of Tompkins against the County of Ontario to charge defendant with the support of a poor person. Judgment for defendant.

This is an action to charge the defendant with the support of a poor person, who was assisted by the superintendent of the poor of the plaintiff from November 6 to December 2, 1914; the plaintiff claiming that such relief was properly chargeable to the county of Ontario, from which county he had come to the county of Tompkins. All notices required by law to fix liability were duly given. On the trial a jury was waived and the evidence was taken before the court.

Randolph Horton, of Ithaca, for plaintiff.
P. H. Leahy, of Canandaigua, for defendant.

DAVIS, J. The facts in this case are comparatively simple and are undisputed. John D. Coakley, a single man about 35 years of age, was born in Bradford county, Pa., and lived there until he was about 21, when his people had all died, and he had no relative in Pennsylvania, except an aunt, who resided near Athens. Soon after he became 21 years of age he was in Sayre for a year or two, and then came into the state of New York, and was around Geneva, Canandaigua, and Rochester, and worked in that locality and elsewhere for about 12 years. He would go back for a few days in the winter to Pennsylvania to visit his aunt, but he never had any home in that state after his parents died.

He was a laboring man, working on farms, and with a hay press, and at that kind of work, and seems never to have stayed for any long period of time in any one place. He voted once at Athens, when he was 21, but he has not voted or registered as a voter since that time. He had no place either in the county of Ontario or in the county of Tompkins that he called his home. In fact, there was no place in the state of New York that he ever called his home. He had no relatives in this state, and apparently none in Pennsylvania, except the aunt. He was a man of apparent good physical strength and health and of average intelligence, having been called as a witness to give testimony as to the facts above stated.

On April 1, 1914, Coakley met one William Creeden at Canandaigua, in Ontario county. Coakley had worked for Creeden pressing hay the season before, and hired out to him on this occasion to press hay at Holcomb. He worked on April 2d and was taken sick the next day, and was there at the home of one Mason for four or five days, when the superintendent of the poor of Ontario county took him to

the County Home, where he was placed in the hospital and treated for about two weeks. He then recovered and went to work, and continued to be employed in Ontario county until about the middle of October of the same year, being self-supporting all of this time. In the latter part of October he came to Auburn, and from there to Groton, in Tompkins county, in early November, intending to go to work in the typewriter shops, where he had worked before at different times. He stopped at a hotel, and before he secured employment he was taken with pneumonia, and was then given temporary relief and furnished medical care by the superintendent of the poor of Tompkins county. Coakley by reason of this illness was at the time unable to work, and he was assisted for four or five weeks.

Prior to April, 1914, he had never been helped by the poor authorities anywhere. After receiving the help for about two weeks in Ontario county, he supported himself until he went to Groton. When he left Ontario county and went to Auburn he had money. He was there two days looking for work, and had his car fare and some money when he left Auburn for Groton, where he expected to get work. He had some money when he reached Groton, and apparently since the illness in Groton he is again self-supporting. He had not lived in any one place in the county of Ontario for one year prior to 1914.

Section 42 of the Poor Law provides:

"Every poor person, except the state poor, shall be supported in the town or county where he may be, as follows:

"1. If he has gained a settlement in any town or city in such county, he shall be maintained by such town or city.

"2. If he has not gained a settlement in any town or city in the county in which he shall become poor, sick or infirm, he shall be supported and relieved by the superintendents of the poor at the expense of the county.

"3. If such person be in a county where the distinction between town and county poor is abolished, he shall, in like manner, be supported at the expense of the county, and in both cases, proceedings for his relief shall be had as herein provided."

In Tompkins county the distinction between town and county poor is still maintained. In Ontario county it has been abolished.

Section 40 of the Poor Law provides that:

"Every person of full age, who shall be a resident and inhabitant of any town or city for one year, * * * shall be deemed settled in such town or city, and shall so remain until he shall have gained a like settlement in some other town or city in this state, or shall remove from this state and remain therefrom one year."

Coakley had not gained a settlement anywhere. While he had been in Ontario county the previous year, his nomadic life had led him elsewhere and he had only returned for two days when he was taken ill in April, 1914, and received the assistance which it was the duty of the superintendent to extend to him. Perhaps at that time he would have come within the definition of "state poor." Section 90, Poor Law. But his illness was of such a temporary character that apparently no steps were taken to remove him to a state almshouse.

The claim on the part of the plaintiff is that Ontario county, having

helped Coakley in the spring of 1914, established his status as a poor person, and therefore became liable for his support until he gained a settlement elsewhere. The learned counsel for the plaintiff bases this claim on section 51 of the Poor Law, which provides, in substance, that a person removed, brought, or enticed, or who shall of his own accord come or stray from one city, town, or county, into any other city, town, or county not legally chargeable with his support, shall be maintained by the county superintendents of the county where he may be, and that they may give notice to either of the overseers of the poor of the town or city from which he came, or to the county superintendents of the county where he may be, and that they may give notice to either of the overseers of the poor of the town or city from which he came, or to the county superintendents of the poor of such county, requiring them forthwith to take charge of such poor person. If Coakley was continuously a poor person from April to November, or was still a poor person when he came to Groton, then the county of Ontario is liable for his support.

That brings us to the crucial question in this case: Who is a "poor person"? The statute says (Poor Law, § 2): "A 'poor person' is one unable to maintain himself." It is common knowledge who the ordinary "poor persons" are. They are those without property, without habits of industry or thrift, improvident, usually physically or mentally deficient, who are unable through efforts of their own to gain a livelihood. They are constantly seeking, and generally receive at somewhat regular intervals, public charity or assistance; they have a practically constant status as "poor persons"; they are not able to maintain themselves for any long period of time under even ordinary conditions. There are yet others who from illness or misfortune, or from some unusual condition, are unable temporarily to maintain themselves. To this latter class the man Coakley apparently belonged. Under ordinary circumstances he was industrious, and, while not accumulating property, had been able to maintain himself all his lifetime until overtaken by illness in April, 1914. Without a home, and without friends who would have given him the care that a person would ordinarily receive under such circumstances, and being among strangers, he was of necessity assisted by the public authorities. In two weeks' time he was apparently again supporting himself by his own industry, and continued to do so for several months. During this time he received no aid from the poor authorities. Was he from the middle of April until the early part of November a "poor person" within the definition of the statute? When he left Ontario county with money for Auburn, and went from there, still with money, to Groton, was he a "poor person" straying from one county into another? I think not.

It seems to me that with poor persons of this class the "taint" does not cling to them after the acquirement of property, accumulated either by industry, or by gift or devise. It seems to me that, when one who has received public aid under circumstances out of the ordinary becomes able by his own industry for a considerable period of time

to maintain himself, he ceases to be a "poor person." There must be some cause besides the mere lapse of time which removes an able-bodied, industrious man from the class of "poor persons."

There is a lack of legal authority on this question in this state, undoubtedly because instances such as disclosed by the facts in this case are rare. In Wilson v. Brooks, 14 Pick. (Mass.) 341, it was held that where a person, who had been supported by his town as a pauper, had bodily health and strength, although of small mental capacity, and was able to earn more than enough to support himself, and had found an employer, he was no longer a pauper. It has been held, also, that a laboring man who had always been able to make a living, and who until his last sickness has never had occasion to ask or receive charity, although without money or property with which to pay the expense of that sickness, is not a pauper within the meaning of a statute providing that one county may recover from another county for assistance given a pauper resident of the latter. Lander Co. v. Humboldt Co., 21 Nev. 415, 32 Pac. 849.

If Coakley desired to go to a new locality to seek employment in a shop during the winter, rather than remain working on a farm or with a hay press, he had the same right to change his residence as any other industrious, self-sustaining citizen. Bellows v. Courter, 6 N. Y. Supp. 73.[1]

I conclude, therefore, that when Coakley came into the town of Groton in November, 1914, having then been employed and self-sustaining for several months, and arriving there with a ticket paid for by himself, and with some money, and with prospects of employment where he had theretofore been employed, he was not a "poor person," and that he became so only when he was again overtaken by misfortune and became ill, and that then the same duty devolved upon Tompkins county to care for him in this emergency as had devolved upon the county of Ontario on the occasion of his previous misfortune in April. He was entitled under section 42 of the Poor Law to be supported by Tompkins county, where he then was; he not having a settlement in any city or town, and not being a "poor person" straying from one county to another.

Findings may be prepared and judgment may be entered for the defendant, dismissing the complaint on the merits.

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 53 Hun, 631.