NORTHWESTERN FUEL COMPANY v. LIVE STOCK STATE
BANK OF SOUTH ST. PAUL AND ANOTHER.
MICHAEL J. O'TOOLE AND OTHERS, APPELLANTS.[1]

January 9, 1931.

No. 28,205.

*Albert Schaller and Kueffner & Marks,* for appellants.

*Thomas C. Daggett,* for R. R. Barry as receiver of Live Stock
State Bank of South St. Paul, respondent.

HOLT, J.

The appeal is from an order made by the court assessing the
stockholders in the Live Stock State Bank of South St. Paul, a bank-
ing corporation organized under the laws of this state, 100 per cent
upon the shares of stock owned. Appellants are stockholders.

The facts necessary to state for an understanding of the questions
involved are these: In March, 1923, the Live Stock State Bank

[1]Reported in 234 N. W. 304.

entered into a contract with the Drovers State Bank of South St. Paul whereby the Live Stock bank turned over to the Drovers bank all the former's assets, except a lease, for the purpose of having its business liquidated by the latter, which agreed to pay the deposits and bills payable liabilities of the Live Stock bank. This contract was consented to by the then superintendent of banks, and the Drovers bank took over such assets; and in discharging the liabilities of the Live Stock bank a large deficit arose after applying $100,000 collected upon a guarantee bond furnished by the Live Stock bank under the contract. On December 23, 1924, A. J. Veigel, the superintendent of banks, filed in his office an inventory of the assets of the Live Stock bank as the same existed at the close of business March 3, 1923, in compliance with G. S. 1923 (2 Mason, 1927) § 7689, which inventory reads:

"All assets of the Live Stock State Bank, South St. Paul, were sold and transferred to the Drovers State Bank, South St. Paul, on March 3, 1923, which bank assumed its deposit and bills payable liability. Assets transferred were guaranteed by the Live Stock State Bank. Live Stock State Bank taken possession of by the superintendent of banks on April 24, 1924."

A duplicate thereof was duly filed in the office of the clerk of the district court of the proper county on January 23, 1925. Notice to creditors to file claims was duly given. And thereafter Veigel, upon notice, petitioned the district court to levy an assessment upon the shares of the capital stock of the Live Stock bank held by the stockholders therein. The present appellants, among others, appeared at the hearing and objected to the proposed assessment. The court made findings embodying the facts related and also that the superintendents of banks, Rathbun and Veigel,

"allowed said Drovers State Bank to collect the assets of said Live Stock State Bank and to disburse the same on account of deposits, as shown by the books at the close of business of said Live Stock State Bank on February 28, 1923. * * * That by virtue of said assignment made to the said Drovers State Bank, referred to in

Petitioner's Exhibit A, the said Live Stock State Bank was insolvent, violated its charter and the banking laws of this state."

However the court denied the petition for an assessment, saying in the memorandum appended to the order: ·

"By reason of the facts as found above, this court has no jurisdiction to proceed further."

Subsequent to the enactment of L. 1927, p. 376, c. 254, the commissioner of banks, Veigel, proceeded thereunder to assess appellants and brought suits against them which are now pending. In December, 1923, the Northwestern Fuel Company began an action against the Live Stock State Bank of South St. Paul in the district court of Ramsey county which resulted in a judgment in favor of the company for $543.61, and a transcript thereof was duly docketed in the district court of Dakota county and an execution thereon issued was returned unsatisfied. Thereupon the Northwestern Fuel Company made application for the appointment of a receiver for the Live Stock State Bank. The commissioner of banks was made a party, and upon a hearing had the court made findings from which and the admissions in the pleadings the facts hereinbefore recited appeared, and in addition that the commissioner of banks

"has never in fact entered into the liquidation of the affairs of said bank. That although said Live Stock State Bank transferred its assets to the said Drovers State Bank in March, 1923, no action was taken by said commissioner of banks pursuant to law to liquidate the affairs of said Live Stock State Bank for the benefit of the creditors of said bank, said bank having ceased to operate on or about the 3d day of March, 1923."

As conclusions of law the court found

"that a receiver should be appointed to sequester the stock, property and effects of said corporation, and for the purpose of enforcing the constitutional or superadded liability of the stockholders of said corporation." ·.

This order was made June 1, 1929. R. Ralph Barry was appointed receiver and qualified, and he petitioned the court to levy an

assessment upon the shares of stock owned by the stockholders. Appellants objected, but to no purpose, for the order was made from which this appeal is taken.

Appellants contend that L. 1909, p. 191, c. 179 (G. S. 1923 [2 Mason, 1927] §§ 7687-7689) entitled: "An act providing for, and regulating proceedings against, and liquidation of, delinquent financial corporations and bankers," supplemented by L. 1913, p. 652, c. 447, and L. 1927, p. 376, c. 254, provides the exclusive remedy for the creditors of an insolvent state bank, and that the district court has no authority to assume jurisdiction to enforce the claims of creditors by sequestration proceeding and the appointment of a receiver, as here attempted. The respondent's position is that the district court has authority to appoint a receiver to liquidate the affairs of a state bank where the commissioner of banks fails to take possession of the assets and does not undertake to liquidate the bank. And the point is also made that appellants cannot question the order appointing the receiver on this appeal, citing Greenfield v. Hill City L. L. & L. Co. 141 Minn. 393, 170 N. W. 343, and cases therein referred to. This point is well taken if it be determined that the liquidation of insolvent state banks is not by the statutes above referred to vested exclusively in the commissioner of banks or the superintendent of banks as formerly designated.

We reach the conclusion that L. 1909, p. 191, c. 179, was intended to place the liquidation of insolvent state banks exclusively with the commissioner of banks. That includes the enforcement of stockholders' double liability. There is no express repeal in that chapter of G. S. 1923, §§ 8020-8031, as amended, 2 Mason, 1927, id. (G. S. 1894, c. 76) ; but it seems to us that exclusive jurisdiction over state banks both as to operation and liquidation was intended. It is true that §§ 5900-5903 of G. S. 1894 (c. 76) were retained as §§ 3179 and 3180 in R. L. 1905, and now appear as G. S. 1923 (2 Mason, 1927) §§ 8020 and 8021; but it is also to be noted that L. 1895, p. 298, c. 145, was "An act to revise the laws relating to banks of discount and deposit" and gave by § 20 thereof plenary power to the superintendent of banks to take possession of the books, records and

assets of insolvent banks. This power given the superintendent of banks was retained in R. L. 1905 by § 2988 (other sections also incorporate L. 1895, p. 298, c. 145) and now appears as G. S. 1923 (2 Mason, 1927) § 7682, which section forbids a banking corporation making an assignment by reason of probable insolvency and directs its governing board to report to the public examiner for his action.

When this situation is considered in connection with the increased power and responsibility given the superintendent of banks, successor to the public examiner now commissioner of banks, over insolvent banks by L. 1909, p. 191, c. 179, and the subsequent enactments referred to, we are forced to the conclusion that his jurisdiction was intended to be exclusive, especially so when he has attempted to exercise the powers conferred with regard to a state bank. This is not saying that he may not call the district court to his aid nor that the district court may not compel him to act should he fail to perform his duty in respect to insolvent banks. The title to L. 1909, p. 191, c. 179, above set out, is indicative of a broad purpose, and the first section thereof shows its scope by referring to R. L. 1905, § 2967, where financial corporations are defined and by § 2968 placed under the control of the public examiner (now commissioner of banks). Furthermore, L. 1909, p. 191, c. 179, appears to be a complete act covering all contingencies where it might be necessary to liquidate a state bank or to enforce rights or claims against it or against financial corporations above referred to. As said in Farm v. Royal Neighbors, 145 Minn. 193, 197, 176 N. W. 489, 490:

"Where a new statute, not in the form of amendments to prior statutes is complete in itself, and shows that the legislature intended to substitute its provisions for those previously in force, and intended the new statute to prescribe the only rules governing the subject matter of the legislation, it supersedes all prior legislation in respect to such subject matter, and repeals all prior laws in so far as they apply thereto."

See also First Nat. Bank v. Schneider, 179 Minn. 255, 228 N. W. 919. We are supported in our conclusion that the commissioner

of banks is by L. 1909, p. 191, c. 179, given exclusive power to take over insolvent banks by decisions in Harriet State Bank v. Samels, 164 Minn. 265, 204 N. W. 938. See also O'Malley v. Drovers State Bank, 181 Minn. 1, 231 N. W. 407.

We think on the face of the record is disclosed want of jurisdiction in the district court to appoint a receiver to enforce plaintiff's judgment. The findings upon which a receiver was appointed show the Live Stock State Bank to be a financial corporation in the control of the commissioner of banks; that it was insolvent and had violated the law so that the commissioner of banks was in duty bound to liquidate the corporation. The record also discloses that he has attempted to do so, has instituted an action to recover a lease, the only asset not taken over by the Drovers State Bank, has applied to the court to order an assessment against the owners of the shares of stock in the Live Stock State Bank, and has instituted suits against them under the provisions of L. 1927, p. 376, c. 254. Where on the record want of jurisdiction of the subject matter affirmatively appears, it can be taken advantage of at any time in any proceeding or action, even though it be orders or judgments of a court of general jurisdiction. In re Estate of Sutton, 161 Minn. 426, 201 N. W. 925; 3 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5139.

Whether the commissioner of banks could properly levy assessments under L. 1927, p. 376, c. 254, and maintain the actions instituted to enforce the same against appellants in view of the district court's refusal to grant the petition of the commissioner for such assessment by its order filed October 3, 1925, we do not now determine, for that has not been litigated in the court below.

The order is reversed.