CARL LUCHT AND OTHERS v. N. J. BELL AND OTHERS.
TOWN OF MIDDLETOWN, ADDITIONAL PLAINTIFF.[1]

February 19, 1943.

No. 33,314.

[1]Reported in 8 N. W. (2d) 26.

*Karl L. Rudow,* for appellants.

*M. F. Juhnke,* for respondents.

PETERSON, JUSTICE.

The Luchts, a husband and wife and their six children, brought action to enjoin the sheriff of Cottonwood county and the town board of Amo township in that county from removing them as poor persons from Amo township to Middletown township in Jackson county.

In April 1942 the town board of Amo township adopted a resolution that the Luchts were likely to become public charges on the town and warned them to depart to Middletown township, their place of settlement. A copy thereof was delivered to the sheriff, who informed Carl Lucht, the husband of Helen and the father of the others, that by virtue of the resolution he would remove the family from Amo to Middletown township. No other notice or warning to depart was given.

Then Middletown township was joined as a party plaintiff, and the action was converted into one to determine settlement and removability. The case was submitted upon a detailed stipulation of facts dated May 2, 1942, relating to the residence of the Luchts and the poor relief received by them.

The town board proceeded under Minn. St. 1941, § 261.01 (Mason St. 1927, § 3157), in warning the Luchts to depart as persons likely to become public charges, and the sheriff threatened to remove them to their place of settlement in virtue of provisions of that statute requiring him to do so. The proceedings to determine settlement and removability of the Luchts as poor persons were had under Minn. St. 1941, §§ 261.08 and 261.09 (Mason St. 1940 Supp. §§ 3161-1 and 3161-2).

The statement of the facts which follows is taken from the stipulation.

Immediately prior to March 1, 1938, the Luchts came from Iowa to Middletown township, where they lived for 24½ months.

About March 15, 1940, they moved to Amo township, where they have resided ever since. From time to time during the entire period since they have been in this state the Luchts have received poor relief.

The present controversy was precipitated by an application for direct relief made by the Luchts to Amo township in November 1941. The application was granted. In December, Middletown township reimbursed Amo township for the relief so furnished and continued to furnish relief to the Luchts during the months from December 1941 to April 1942, inclusive. After April the Luchts received no relief.

Carl Lucht had a lease for one year of a 13½-acre farm in Amo township expiring March 1, 1943. There was a dwelling house on the farm, in which his family lived, a hog house, chicken house, and a garden plot. The Luchts intended to occupy and to use the premises for farm purposes during the term of the lease. Carl had applied to the Farm Security Administration for a $500 loan to enable him to purchase three cows, 400 baby chicks, a brooder house, one sow, a cream separator, and feed, which the agent in charge led him to believe would be granted, because he had paid off a prior loan or loans, but for which no definite commitment had been made at the time.

The Luchts had a considerable cash income from the wages of Carl and some of the children. The stipulation does not show the exact date on which such employment was obtained. Apparently it was after the Luchts had received poor relief for the month of April 1942. Carl was employed on a large farm nearby in Cottonwood county at a salary of $70 per month plus his board, which was to be increased to $80 per month for two months beginning in July, after which he was to be paid the going wages for such help. Paul, one of the sons, was employed at $50 per month plus board and room. His employment was to continue at least through the 1942 farming season. Raymond, another son, had obtained employment at a compensation of two dollars per day, for the same season to begin when the school term expired. Ruth, a daughter,

worked part time as a domestic. The amount of her earnings is not stated.

At the time the stipulation was signed the Luchts had an aggregate cash income of at least $120 per month, not including Ruth's. During the summer and the remainder of the 1942 farming season such income, it was estimated on the argument, would be from $170 to $190. While the stipulation is not explicit that the income mentioned was sufficient to provide a living for the family, that fact appears inferentially. At any rate, after they commenced to receive a cash income the Luchts received no further poor relief.

Here, as below, the issues are whether the settlement of the Luchts was in Amo or in Middletown township and whether, in view of their ability to support themselves, they were poor persons and removable as such. The court below held that the Luchts were poor persons, that their settlement was in Middletown township, and ordered their removal thereto. Plaintiffs appeal.

In view of the fact that we are of the opinion that the Luchts were not poor persons and were not removable as such and that such a holding is decisive of the case, we shall confine our discussion to that single point.

A poor person is one who for any reason is unable to earn a livelihood. Minn. St. 1941, § 261.01 (Mason St. 1927, § 3157); In re Settlement of Venteicher, 202 Minn. 331, 278 N. W. 581; Howie v. Gangloff, 165 Minn. 346, 206 N. W. 441; Brabec v. Boedigheimer, 132 Minn. 370, 157 N. W. 508. *Cf.* Moses v. Olson, 192 Minn. 173, 255 N. W. 617. Conversely, one who can and does support himself cannot be considered as likely to become chargeable as a poor person. In re Settlement of Rudquist, 187 Minn. 331, 245 N. W. 365; Lee County v. Lackie, 30 Ark. 764; Wilson v. Brooks, 31 Mass. (14 Pick.) 341; Supts. of Poor of Livingston County v. Supts. of Poor of Oakland County, 141 Mich. 667, 104 N. W. 978; Jenness v. Emerson, 15 N. H. 486; Lander County v. Humboldt County, 21 Nev. 415, 32 P. 849; Town of Londonderry v. Town of Acton, 3 Vt. 122.

The alleged poor person must be such at that time when the proceedings are had to determine his settlement and removability. The fact that such person received poor relief at some prior time is not enough. Town of Danville v. Town of Wheelock, 47 Vt. 57. In Wilson v. Brooks, 31 Mass. (14 Pick.) 341, *supra,* the alleged pauper, who had received poor relief for 15 years previously, was held not to be such in fact, because it appeared that he was able to and did support himself. The court said that a pauper (31 Mass. [14 Pick.] 343) "may be raised from poverty and dependence" by becoming self-supporting either through his own efforts and abilities or by the acquisition of means sufficient for the purpose. Likewise, one cannot be considered to be a poor person simply because he might at some future and as yet unascertained future time become chargeable. In Inhabitants of Cornish v. Inhabitants of Parsonsfield, 22 Me. 433, 436, the court held that, while the phrase "likely to become chargeable" was capable of a more enlarged meaning, it should be confined to cases of "ascertained necessity." That construction harmonizes with the intention to remove to their place of settlement only those who actually are or are apt to become charges on the town or county, where they happen to be found.

It seems to be almost axiomatic that one who is not in fact a poor person cannot be dealt with as one who is. To dwell peacefully within the state and to move at will from place to place therein is a constitutional right. Edwards v. California, 314 U. S. 160, 62 S. Ct. 164, 86 L. ed. 119; United States v. Wheeler, 254 U. S. 281, 41 S. Ct. 133, 65 L. ed. 270; 12 Am. Jur., Constitutional Law, p. 109, § 459. Because removal of a person from one place to another against his will otherwise would trench on his constitutional rights (see Inhabitants of Cornish v. Inhabitants of Parsonsfield, 22 Me. 433; Wilson v. Brooks, 31 Mass. [14 Pick.] 341; County of Tompkins v. County of Ontario, 92 Misc. 272, 156 N. Y. S. 335), the power to remove depends upon establishment, as an indispensable fact, that the person removed is a poor person.

The evidence in the instant case does not as a matter of law

support a finding that the Luchts were poor persons. At the time of trial they had a home on a small farm under lease on which they could raise at least a part of their living. In addition, they had a cash income in excess of $120 per month, with a reasonable prospect of increasing it within a month or so to between $170 and $190 per month. After acquiring such income they received no further poor relief. They were to all intents and purposes self-supporting. Under those circumstances, they were neither chargeable nor removable as poor persons. Whether they might become poor persons at some future time depended on their necessity for poor relief in the future, which could only be ascertained if and when that time should come. It was not an ascertained fact at the time of trial.

The judgment is reversed with directions to enter judgment that the Luchts are not poor persons and are not removable.

