JAMES B. ROBINETTE v. NED PRICE AND OTHERS.[1]

March 26, 1943.

No. 33,368.

[1]Reported in 8 N. W. (2d) 800.

522

See 211 Minn. 223, 300 N. W. 798.
*Arthur LeSueur,* for appellant.
*John T. Galarneault,* for respondents.

PETERSON, JUSTICE.

Plaintiff sues defendants to recover damages for having without legal cause or excuse wrongfully and forcibly removed him and his family as paupers from Aitkin county to the city of Minneapolis, Hennepin county.

The complaint alleges that prior to May 16, 1940, plaintiff lived in Minneapolis, where he owned his own home and had his settlement for purposes of poor relief; that he sold his home in Minneapolis; that on the date mentioned he acquired the ownership in fee simple of an 80-acre farm in Aitkin county, on which there were a house and some other buildings; and that during May 1940 he moved with his family and commenced to reside on the farm. He worked and improved the land. He had two cows, 50 chickens, and some farm tools and equipment.

It is further alleged that the defendant Price is the sheriff of Aitkin county; that the defendants Yetter and Youngberg are members of the county welfare board of that county; that the sheriff "under the orders" of the other two defendants without legal cause or excuse wrongfully and forcibly removed plaintiff and his family from Aitkin county to the city of Minneapolis and that such removal was "in pursuance of a conspiracy entered into and carried out by said three defendants to compel the removal of said plaintiff from Aitkin county."

The answers admit the removal, but justify it under an order of the county welfare board and an order of the district court for such removal. Plaintiff applied for relief in Aitkin county in October 1940. On November 6, 1940, the county welfare board issued an order warning plaintiff as a pauper to depart from Aitkin county to his place of settlement. The proof of service

shows that it was served only on plaintiff's wife. On November 29, 1940, the board made an order reciting that plaintiff had been previously warned to depart and directing the sheriff to remove him.

On January 10, 1941, in a proceeding entitled, "In the Matter of the Dispute between Aitkin County * * * and the City of Minneapolis" as to the place of settlement of plaintiff and all the members of his family, naming them, the judge of the district court determined that plaintiff and the members of his family were poor persons; that their poor settlement was in the city of Minneapolis; and that they be removed to their place of settlement. The order recites due proof of service of notice of hearing upon plaintiff and all the members of his family and upon the political subdivisions concerned and the fact that plaintiff and the members of his family did not appear.

The replies allege that the order of the district court and of the county welfare board were void upon the ground that the court and the board were without jurisdiction both of the subject matter and of the person.

Upon defendants' motion the court granted judgment in their favor upon the pleadings.

While the pleadings do not refer to it, our decision in In re Settlement of Robinette, 211 Minn. 223, 300 N. W. 798, reversing the order of the district court determining plaintiff's place of settlement and providing for his removal, was the basis for claims asserted by the parties. In that case the appeal was taken on April 16, 1941, approximately two and one-half months after the sheriff had executed the court's order for the removal of plaintiff and his family. Our decision did not hold that the court's determination of plaintiff's place of settlement and for his removal was erroneous or void. We simply held that, since the city of Minneapolis at all times admitted the facts adjudged, there was no necessity for a judicial determination, as against it, of those questions. We did not decide anything as between the county of Aitkin and this plaintiff.

In this court plaintiff contends: (1) That the order for judgment on the pleadings is erroneous in form for the alleged reason that in the order the court made findings of fact and conclusions of law as a basis for its decision instead of disposing of the matter by a simple order; (2) that the order fails to mention the defendants Yetter and Youngberg; and (3), where he says that he has grouped "practically" "all the real issues," that plaintiff's removal by defendants was wrongful upon the grounds: (a) that the order of the district court was held to be void and reversed by this court in In re Settlement of Robinette, 211 Minn. 223, 300 N. W. 798; and (b) that the orders of the district court and of the county welfare board were void for entire lack of jurisdiction of both the subject matter and the person.

■ A motion for judgment on the pleadings should be decided by order without findings and conclusions. Minneapolis Trust Co. v. Birkholz, 172 Minn. 231, 215 N. W. 223. That is precisely what was done in the instant case. Plaintiff's claim that findings and conclusions were made is without basis, as the order plainly shows. There is no merit to his contention.

■ While the memorandum attached to the order confines the discussion of the court's reasons for its decision to the case against the sheriff, the order on its face shows that judgment was ordered in favor of the other defendants as well as against the sheriff.

■ The rules governing a sheriff's liability for executing the process and orders of a court of general jurisdiction arise from the nature of his duty in that connection. It is the imperative duty of a sheriff to execute the process and orders of a court of competent jurisdiction. Minn. St. 1941, § 387.03 (Mason St. 1927, § 907), provides that the sheriff "shall * * * execute all processes * * * and orders issued or made by lawful authority and to him delivered." Unquestioning obedience, without power or right to review or to revise, being the duty of the officer, he is afforded upon grounds of public policy a commensurate protection against personal liability for acts done in the performance of such duty.

A sheriff is protected and justified for acts done in executing the process and orders of a court having jurisdiction of the subject matter when the process is regular on its face. Whitney v. Welnitz, 153 Minn. 162, 190 N. W. 57, 28 A. L. R. 68; Hill v. Rasicot, 34 Minn. 270, 25 N. W. 604; Orr v. Box, 22 Minn. 485.

■ The order for plaintiff's removal was made by a court having jurisdiction of the subject matter. Jurisdiction is the power to hear and to determine a cause. State v. Mandehr, 168 Minn. 139, 209 N. W. 750; State ex rel. Zaske v. Matter, 78 Minn. 377, 81 N. W. 9; Montour v. Purdy, 11 Minn. 278 (384), 88 Am. D. 88. Jurisdiction of the subject matter means authority to hear and determine a particular class of actions and the particular questions which the court assumes to decide. Reid v. Independent Union, 200 Minn. 599, 275 N. W. 300, 120 A. L. R. 297; Sache v. Wallace, 101 Minn. 169, 112 N. W. 386, 11 L.R.A.(N.S.) 803, 118 A. S. R. 612, 11 Ann. Cas. 348. In the instant case the court's power and authority emanates from the applicable statutes. "Power to try and render judgment on the merits is jurisdiction. Whenever that power is given, jurisdiction is conferred, no matter what terms the statute employs." Chauncey v. Wass, 35 Minn. 1, 13, 25 N. W. 457, 30 N. W. 826, 830. The district court is vested by Minn. St. 1941, §§ 261.08 and 261.09 (Mason St. 1940 Supp. §§ 3161-1 and 3161-2), with authority and power, which it is required by mandatory language to exercise, to hear and determine disputes between political subdivisions as to the place of settlement of any poor person; to determine by order in proceedings concerning such disputes the place of settlement of the poor person involved; and to provide in the order for the removal of the poor person to his place of settlement as determined by the order.

A proceeding to determine settlement and removability under the statutes involves the questions decided by the district court. Such a proceeding involves, on the one hand, issues between the political subdivisions concerning their liability for the support of the pauper, which are determined by his place of settlement, to which removability of the pauper is a mere incident; and, on the

other hand, issues as between the pauper and the political subdivisions concerning not only his status as a pauper but his removability as well. The question of removability touches the alleged pauper's right to select freely his place of residence without interference by others. Inhabitants of Shirley v. Inhabitants of Lunenburg, 11 Mass. 379; Hartland v. Pomfret, 11 Vt. 440. See Lucht v. Bell, 214 Minn. 318, 8 N. W. (2d) 26.

Plaintiff contends that the statutes for the removal of poor persons have no application to him, because he was a freeholder occupying his freehold. He invokes the rule that statutes providing for the removal of poor persons do not authorize removal of a person from his freehold estate, even where the freeholder has not acquired a place of settlement in the district seeking his removal. The rule seems to have unanimous support in the authorities. Inhabitants of Somerset v. Inhabitants of Dighton, 12 Mass. 383; Town of Londonderry v. Town of Acton, 3 Vt. 122; Rex v. Matlock, 1 A. & E. 124, 28 E. C. L. 80, 110 Reprint 1155, and numerous other cases cited in note 41; 48 C. J., Paupers, p. 495, § 142. Decision here turns on whether plaintiff's irremovability as a freeholder goes to the jurisdiction of the court or to his personal right. The effect of a rule of law may be such as to prevent a court from acquiring jurisdiction of the subject matter. N. W. Fuel Co. v. Live Stock State Bank, 182 Minn. 276, 234 N. W. 304; Vallely v. Northern F. & M. Ins. Co. 254 U. S. 348, 41 S. Ct. 116, 65 L. ed. 297. See numerous illustrative cases cited in the dissent in Reid v. Independent Union, 200 Minn. 599, 275 N. W. 300, 120 A. L. R. 297. Where, however, the rule relates not to the jurisdiction of the court, but to the right of the party, it does not affect the jurisdiction of the court. Lenhart v. Lenhart Wagon Co. 211 Minn. 572, 2 N. W. (2d) 421. Jurisdiction of the subject matter comprehends the power to decide a particular case wrongly as well as rightly. State v. Mandehr, 168 Minn. 139, 144, 209 N. W. 750. See State ex rel. Ging v. Board of Education, 213 Minn. 550, 571, 7 N. W. (2d) 544, 556. Rights in the nature of exemptions and privileges are regarded as relating not to jurisdiction, but simply

to rights of the party to be asserted and adjudicated. Illinois Cent. R. Co. v. Adams, 180 U. S. 28, 21 S. Ct. 251, 45 L. ed. 410. While there is not much authority relating to the point, such as has come to our attention regards the pauper's rights of irremovability as not going to the jurisdiction of the court, but to the rights of the pauper and as such are to be asserted by him as a defense. In re Settlement of Cegon, 212 Minn. 75, 2 N. W. (2d) 433. In Town of Dummerston v. Town of Newfane, 37 Vt. 9, the court reviewed at length the American and English authorities and concluded that a freeholder's right of irremovability is a personal "privilege" not to be removed founded in common-law hostility to coercive removal of a person from his property, which was confirmed by Magna Charta and which was so fundamental as not to be affected by statutes for the removal of paupers. Our conclusion is that a freeholder's right of irremovability from his freehold is a personal right or privilege and that it does not go to the court's jurisdiction to determine his removability. Since the issue in a proceeding under §§ 261.08 and 261.09 (§§ 3161-1 and 3161-2) involves not only determination of the place of the poor person's settlement, but his removability also, the determination of removability involves passing on objections and defenses to the exercise of that power. Irremovability of a freeholder is such a defense.

■ The removal order was regular on its face. It showed that it was issued by the district court in a proceeding brought to determine plaintiff's place of settlement and his removability. It recited that personal service of the notice of hearing was had on him. Thus, it showed jurisdiction both over the subject matter and plaintiff's person. The order here affirmatively recites such jurisdiction. All that is required to make process fair on its face is that it must proceed from a court having jurisdiction of the subject matter and that it contain nothing which ought reasonably to apprise the officer that it was issued without authority. Orr v. Box, 22 Minn. 485, *supra;* Hines v. Chambers, 29 Minn. 7,

11 N. W. 129. The order in question was fair on its face under the rule.

It is not necessary that the process under which a sheriff acts should show jurisdiction of the person to afford him protection and justification for his acts in executing it. Orr v. Box, 22 Minn. 485; Gunz v. Heffner, 33 Minn. 215, 22 N. W. 386. Here, however, the order shows that plaintiff was made a party to the proceedings to determine his place of settlement and his removability. True, our statute does not require that the poor person be made a party. Absent statutory requirement of notice to the pauper, the rule is that "a pauper ought to have notice, and to be heard before he is removed." 2 Botts' Poor Law Cases (5 ed.) p. 642, § 714; Hartland v. Pomfret, 11 Vt. 440. Such a notice is necessary to bring the pauper before the court. The mere fact that the party is a pauper or has applied for relief does not authorize the poor relief officials to treat his application for relief as a consent to an order for removal or to such action as they might think necessary to procure him relief. In The King v. Inhabitants of Martley, 5 East 40, 44, 102 Reprint 984, holding that a freeholder was not removable, the court ruled against such a contention. Lord Chief Justice Ellenborough answering the contention said:

"If the inference of consent to the removal, derived from the mere act of applying to the parish for relief, be pushed so far, it may as well be argued that the pauper consented also to a conveyance of his property, if that be a step towards entitling himself to relief."

The question has not often been raised, but it must be apparent to everyone that the final order or judgment determines rights of as much importance to the pauper as those of the poor districts involved. For that reason, statutes often require that the pauper be made a party to the proceedings. In Inhabitants of Shirley v. Inhabitants of Lunenburg, 11 Mass. 379, 383, Mr. Chief Justice Parker said:

"But we are disposed to consider the town and the pauper as

several and distinct parties, each having their distinct interests and rights. The judgment upon the process is in its nature several against the pauper to remove him from one town to another, and against the town to charge it with his support and the expense of the suit. In this light the subject is viewed by the legislature, who have, in the whole course of the statute, considered them as independent parties. The town is the principal party; the judgment is to bind it; the summons from the justice is directed to it; and the damages and costs are to be paid by it; nor is there any part of the judgment which relates to the pauper personally. He is considered by the statute as a *witness,* and in some respects like other witnesses, and is made a party for the preservation of his own rights, giving him the privilege of a hearing, and a right to appeal, and to a writ of error. He is, in fact, no more a party with the defendant than with the plaintiff; for it is his right by law to be supported in the town where he has his settlement; and he may be a witness for either town, being no otherwise interested in the question than as his personal liberty is concerned. If he acquiesces in the judgment establishing the place of his settlement, although he may not have been summoned, there is no reason why the town upon which he is charged should volunteer to assert his rights without his request."

The absence of such a statutory requirement is no reason for not making the poor person a party. Interested parties are joined and their rights adjudicated in other special proceedings, although they are not necessary parties, as, for example, in *mandamus.* State ex rel. Bd. of Co. Commrs. v. Johnson, 111 Minn. 10, 126 N. W. 479; Curtis v. Hutchinson, 126 Minn. 264, 148 N. W. 66; State ex rel. City of Minneapolis v. M. & St. L. Ry. Co. 39 Minn. 219, 39 N. W. 153; 4 Dunnell, Dig. & Supp. § 5769. The practice in England has been to treat a pauper as a party at least to the extent of having the right to appeal as a party aggrieved. The King v. Inhabitants of Hartfield, Carth. 222, 90 Reprint 733. By making the poor person a party to the proceedings, not only are

his rights protected, but the adjudication is *res judicata* as to him also. If it were not for a reversal of the court below, Daley v. Mead, 40 Minn. 382, 42 N. W. 85, and the fact that the point was not raised, this case *might* be decided against plaintiff upon the grounds of *res judicata.*

Of course, most paupers are incapable of resisting the action of the poor districts for their removal, but that is no reason why their rights should not be fully protected by giving them an opportunity to be heard in such proceedings. See Lucht v. Bell, 214 Minn. 318, 8 N. W. (2d) 26, and the cases therein cited.

■ Plaintiff contends that, since he was not removable as a freeholder, the order for his removal was erroneous and that consequently the sheriff is liable. Irremovability, as has been said, goes not to the jurisdiction of the court, but to the merits of the order made. Assumption that the court erred in failing to hold that plaintiff was not removable does not render the sheriff liable for executing its order. A sheriff, being neither permitted nor required to inquire into the validity of an order placed in his hands for execution, is protected by the order even though the proceedings in which it was issued are erroneous and voidable. McSherry v. Heimer, 132 Minn. 260, 156 N. W. 130 (search warrant); Baker v. Sheehan, 29 Minn. 235, 12 N. W. 704. The rule has been applied in cases holding that a sheriff is not liable for arresting, in obedience to a process erroneously issued, a person who is privileged from arrest. Bennett v. Ahrens (7 Cir.) 57 F. (2d) 948; Carle v. Delesdernier, 13 Me. 363, 29 Am. D. 508; Smith v. Jones, 76 Me. 138, 49 Am. R. 598.

In Allison v. Rheam, 3 Serg. & Raw. (Pa.) 139, 8 Am. D. 644, it was held that, where a writ of *capias ad satisfaciendum* was issued against a judgment debtor having real and personal estate to satisfy plaintiff's judgment contrary to the provisions of a statute prohibiting the issuance of the writ in such cases, the writ was a justification for the acts of the officer executing it, but not for those of the party who wrongfully procured the writ to issue.

■ The fact that the order for the removal of plaintiff was sub-

sequently reversed does not deprive the sheriff of protection in executing it before the reversal was had. Just as the sheriff is not required to make inquiry into the sufficiency of the prior proceedings, Whitney v. Welnitz, 153 Minn. 162, 190 N. W. 57, 28 A. L. R. 68, so, likewise, protection under the order does not depend upon the ultimate success of the party who procured the order to issue. Gates v. Gates, 15 Mass. 310; York v. Sanborn, 47 N. H. 403. Nor is a sheriff required to anticipate that an order or other process which he is executing may be invalidated by a subsequent reversal of the proceedings in which the same was issued. Where, upon appeal, the order or judgment is reversed, an officer who acted upon it prior to the reversal is protected upon the ground that he acted under a process which was at the time valid and in force. Beckley v. Boardman, 6 Conn. 372; Ashcraft v. Elliott, 18 Ky. L. Rep. 934, 38 S. W. 1062; Haebler v. Myers, 132 N. Y. 363, 30 N. E. 963, 15 L. R. A. 588, 28 A. S. R. 589; Clark v. Smith, 57 App. Div. 524, 68 N. Y. S. 39. See Farmer v. Crosby, 43 Minn. 459, 461, 45 N. W. 866; Peck v. McLean, 36 Minn. 228, 30 N. W. 759, 1 A. S. R. 665.

■ The liability of the members of the county welfare board depends upon somewhat different considerations. County welfare boards are organized under Minn. St. 1941, §§ 393.01 to 393.09 (Mason St. 1940 Supp. §§ 974-11 to 974-22). Among other things they are "charged with the duties of administration of all forms of public assistance and public welfare, both of children and adults." Id. § 393.07, subd. 2 (§ 974-17[b]). The administration of public assistance involves duties formerly performed by county and town officials such as warning out poor persons and ordering them to depart to their place of settlement under Id. § 262.11 (Mason St. 1927, § 3173), and, in cases of dispute with other political subdivisions, instituting proceedings under Id. §§ 261.08 and 261.09 (Mason St. 1940 Supp. §§ 3161-1 and 3161-2), to determine an alleged poor person's place of settlement and to provide for his removal thereto in all proper cases. Where, as here, the court finds that the poor person's settlement is in a political sub-

division of another county and orders the poor person's removal thereto, the functions of the welfare board cease and those of the sheriff in executing the court's order begin. All that the members of the welfare board did in the instant case was strictly in line with their duties under the statutes. Such duties are governmental, and, since they involve inquiry of fact and the exercise of judgment based on such inquiry, they are not ministerial, but *quasi judicial* in nature. Block v. Sassaman (D. C.) 26 F. Supp. 105; Chaffee v. Town of Oxford, 308 Mass. 520, 33 N. E. (2d) 298, 134 A. L. R. 756; Nadeau v. Marchessault, 112 Vt. 309, 24 A. (2d) 352. A public officer whose functions are judicial or quasi judicial is not liable to persons injured by the honest exercise of his judgment within his jurisdiction, however erroneous his judgment may be. Cook v. Trovatten, 200 Minn. 221, 274 N. W. 165; Nelson v. Babcock, 188 Minn. 584, 248 N. W. 49, 90 A. L. R. 1472; Roerig v. Houghton, 144 Minn. 231, 175 N. W. 542; 43 Am. Jur., Public Officers, pp. 85-87, §§ 273, 274. In Stewart v. Case, 53 Minn. 62, 66, 54 N. W. 938, 39 A. S. R. 575, where an assessor was held not liable for acts done in performance of the duties of his office, the reason for the rule of nonliability in such cases was stated as follows:

"The same reason which justifies the rule of exemption in the case of judges of courts applies to assessors, when they are determining the value of property for the purposes of taxation. Protection is not extended to the judge for his own sake, but because the public interest requires full independence of action and decision on his part, uninfluenced by any fear or apprehension of consequences personal to himself."

Since the acts of the members of the welfare board in the instant case were in performance of duties imposed upon them by statute, they are not liable to plaintiff for the consequences of such acts.

■ The allegation that the members of the welfare board and the sheriff acted in pursuance of a conspiracy adds nothing to the

cause of action alleged. There is no allegation that the acts done by the members of the welfare board were outside their line of duty. On the contrary, the alleged wrong is that they acted erroneously in the line of their duty to plaintiff's injury. Likewise, the only basis for recovery against the sheriff is that his acts in the performance of his duty were wrongful because he executed an order which plaintiff claims was void. The acts of the several officers were required to be done by statute. The several acts were lawful and privileged. The statutes contemplate that the officers mentioned should each perform the acts, of which plaintiff complains, and to coördinate their activities to achieve the ends which such statutes have in view. The combination, such as there was, was lawful, because required by the statutes. There was, consequently, no agreement to commit any unlawful act or to commit any lawful act in an unlawful manner. Cooper v. O'Connor, 69 App. D. C. 100, 99 F. (2d) 135, 118 A. L. R. 1440, *certiorari* denied, 305 U. S. 643, 59 S. Ct. 146, 83 L. ed. 414; rehearings denied, 305 U. S. 673, 59 S. Ct. 241, 242, 83 L. ed. 436, and 307 U. S. 651, 59 S. Ct. 1035, 83 L. ed. 1530. In Jones v. Kennedy, 73 App. D. C. 292, 121 F. (2d) 40, the members of the securities and exchange commission were held not liable for acts done in performance of statutory duty in laying before the attorney general facts as a basis for the prosecution of the plaintiff there on criminal charges. An allegation that the members of the commission and others involved acted pursuant to a conspiracy was held to add nothing to the complaint. We so hold in the instant case.

Affirmed.